**CITY OF LAWRENCE and City of Lawrence Volunteer Fire Department, Inc., On Behalf of Themselves and All Others Similarly Situated, Appellants–Plaintiffs,**

v.

**WESTERN WORLD INSURANCE COMPANY, INC., Appellee–Defendant.**

**No. 30A05–9211–CV–407.**

Court of Appeals of Indiana, Fifth District.

Dec. 20, 1993.

Steven H. Frank, Robert F. Ahlgrim, Jr., Carter & Leerkamp, Indianapolis, Michael J. Tosick, Greenfield, for appellants-plaintiffs.

Sharon L. Wright, Linder & Hollowell, Indianapolis, for appellee-defendant.

BARTEAU, Judge.

The primary question before us is the appropriateness of a grant of summary judgment in favor of defendant insurance company in a suit for return of premiums on a policy alleged to provide only illusory coverage.

We affirm.

### FACTS

From 1984 through 1990, the City of Lawrence (City), on behalf of its Volunteer Fire Department, purchased an insurance policy from Western World Insurance Co., Inc. (Western). In 1990, City declined to renew the policy after questioning the coverage provided. No claims arose during the time periods covered by the policies. In 1992, City brought an action against Western for return of its premiums. The trial court granted Western's motion for summary judgment. City appeals.

### STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and that judgment as a matter of law is appropriate. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; the opponent may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369, 1371. When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Collins v. Covenant Mut. Ins. Co.* (1992), Ind.App., 604 N.E.2d 1190, 1194.

### ILLUSORY COVERAGE

City contends that the grant of summary judgment was erroneous because the policy excluded from coverage *all* injuries or harm which could possibly arise, making the purported coverage completely illusory.

According to the policy in question, it provides coverage for:

... [A]ll sums which the insured shall become legally obligated to pay as damages because of liability arising out of any negligent act, error or omission in rendering or failure to render professional services of the type described ...

However, Section II of the policy, entitled "EXCLUSIONS", contains the following provisions:

This policy shall not apply to liability of any kind based upon, involving or arising directly or indirectly out of:

\* \* \* \* \* \*

(1) liability assumed by the Insured under any contract or agreement, whether oral or written;

\* \* \* \* \* \*

(s) personal injury;

and Section II.2. provides:

Notwithstanding anything to the contrary, this policy shall not apply to any liability arising directly from:

(a) bodily injury;

(b) property damage.

The policy defines bodily injury as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." The policy defines property damage as "physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

City contends that given the exclusions for damages arising from bodily injury, property damage, personal injury and contract liability, the policy in reality provides no coverage for any conceivable loss. It argues that if a policy excludes from coverage all injuries or harm for which a policy

holder would be legally obligated to pay damages, there can be no coverage, and the policy in question is illusory because no risk attaches to the insurance company.

Western responds that the policy does provide coverage for losses arising indirectly from bodily injury and property damage. Western's position is that the policy at issue is an errors and omissions policy (something akin to malpractice insurance), covering errors in professional judgment, and that bodily injury and property damage arising *indirectly* from errors or omissions in professional judgment are covered under the policy.

From an examination of the policy, we agree with Western that the policy can be construed to provide coverage for indirect bodily injury and property damage. While liability arising both directly and indirectly from such things as contract and personal injury is specifically excluded from coverage, conversely, only liability arising *directly* from bodily injury and property damage is excluded. Thus, we are unable to say, from the language in the policy, that there is no risk for which coverage is provided.

City argues that indirect bodily injury and property damage are non-existent risks. It is true that if provisions in an insurance policy provide only illusory coverage, they should be enforced to satisfy the expectations of the insured. *Davidson v. Cincinnati Ins. Co.* (1991), Ind.App., 572 N.E.2d 502, 508. What complicates this situation and distinguishes it from other cases is the fact that no loss was ever incurred and consequently no claim submitted under the policies. Thus, no opportunity ever arose for a determination of the viability of indirect liability coverage and without a claim to use as a guide, we also cannot examine its scope. Because coverage is provided on the face of the policy, summary judgment was appropriate on the claim of illusory coverage.

## FRAUD

City contends that its representatives relied on misrepresentations contained in the policies and that those misrepresentations induced them to believe they were purchasing a general liability policy covering fire fighting activities instead of the errors and omissions policy they purchased.

Western responds that to avoid just such a situation, it does not market the coverage directly to the consumers. Rather, it offers it only through insurance specialty wholesalers who, in turn, execute and deliver policies in response to applications made by the prospective insured through the insured's own agent. Western also instructs the wholesalers that all applicants for the firemen's errors and omissions policy must also carry comprehensive general liability coverage.

City responds that even though Western does not sell the policy directly to consumers, the actions of the agents who procured the policy for City are attributable to Western.

An agent who operates an independent insurance agency representing several insurers is considered a broker. *Callis v. State Auto. Ins. Co.* (1991), Ind. App., 579 N.E.2d 129. A broker "is normally deemed to be an agent of the buyer, not the insurer, and the insurer is not liable for the broker's tortious conduct." *Id.* at 131. However, when the "broker makes application for insurance and the insurance policy is issued, the broker is the agent of the insurer and can bind it within the scope of his authority." *Aetna Ins. Co. of the Midwest v. Rodriguez* (1988), Ind., 517 N.E.2d 386, 388. "In that case, it becomes the insurer's responsibility when the broker/agent fails to ascertain the nature of the interests to be protected." *Callis*, 579 N.E.2d at 131. Because the two insurance agents involved in the present case acted as brokers, they are considered agents of Western. Thus, Western is not sheltered from a claim of fraudulent misrepresentation merely by marketing the policy through a broker rather than directly to the consumer.

City identifies the alleged misleading portions of the policy as (1) the declarations page of the policy, which contains the heading "General Liability–Automobile", (2) the

endorsement providing Western's obligation to pay damages for bodily injury liability and property damage liability coverages only in excess of the deductible, in light of the fact City contends those coverages are excluded, (3) other references to bodily injury and property damage liability, and (4) the insuring clause which provides that "[t]he Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of liability arising out of any negligent act, error or omission in rendering or failure to render professional services." City contends that because this policy is marketed to fire departments that engage in fire suppression activities, including these references in the policy creates an inference of fraud and precludes the entry of summary judgment.

City relies on several affidavits and depositions to support its claim, including (1) the affidavit of Charles Winchell, a former Western claims representative, to the effect that occasionally an insured believed it had purchased a general liability policy when in fact it had purchased a professional liability policy, (2) the deposition of Lawrence Mayor Thomas Schneider to the effect that he naturally assumed that the policy provided liability insurance coverage, (3) the affidavit of fire fighter Michael Bray to the effect that in purchasing the policy in question, the fire fighters sought insurance that would protect them from potential liability for property damage and personal injury which might result during fire suppression activities, and (4) the deposition of insurance agent Bruce Dotts to the effect that he believed "E & O is, as it states, an error they make or an omission in the protection of life or fighting of fire or going to a fire, if they don't go to the right place, which happened once."

It appears from the record that a church burned down prior to 1982 after fire fighters went to the wrong address. This event prompted questions as to whether City had insurance coverage for such an error. The insurance agent who handled all of City's insurance needs was contacted and procured the policy at issue for City. City was at all times covered by a general liability policy. When City later changed insurance agents, the new agent procured the same policy for City through a different wholesaler.

City did not present evidence that anyone with decision-making authority ever read the policy or in any way relied upon representations of coverage made in the policy. Both agents appeared to understand the scope and limitations of the policy at issue and clearly understood it to be a professional errors and omissions policy rather than a general liability policy. City presented no evidence that it needed additional general liability coverage; rather, all the evidence indicates that it had adequate general liability coverage. Thus, we fail to see how any claimed misleading representations in the policy can support a claim of fraud when there is no evidence that City relied on anything contained in the policy, or any representations of the agents, in making its decision to purchase the policy.

Nevertheless, City contends that payment of the premium demonstrates reliance on the misleading representations in the policy. Because there is no evidence that the policy was examined prior to payment of the premium, their argument must fail. Additionally, payment of the premium should have alerted City it was *not* buying a general liability policy rather than vice-versa. The premium for the Western policy amounted to approximately $12.00 per fire fighter per year. The nominal amount of the premium should have alerted City that the policy did not provide general liability coverage.

Summary judgment is also appropriate on the claim of fraud because of the factual situation here. City did not claim that the coverage it purchased was not what it desired until after the period of coverage expired. City received the benefit of having the coverage provided by the Western policy, no claims were ever presented under the policies and no loss was sustained by City. Therefore, any mistake as to the scope of coverage desired was

rendered moot when the time for claims under the policies expired.

### AFFIDAVIT OF JOHN CARUCCIO

City claims that the trial court erroneously denied its Motion to Strike the Affidavit of John Caruccio. City contends that the affidavit is being offered as expert testimony on interpretation of the contract, an improper practice when interpretation of a contract is a matter of law for the court. *Hamilton Airport Advertising, Inc. v. Hamilton* (1984), Ind.App., 462 N.E.2d 228, 235. City contends that each paragraph of Caruccio's affidavit is only an opinion, not facts, and should not have been admitted because the contract was unambiguous.

Western responds that the affidavit does contain facts and is not an expert opinion. It also responds that City's argument that the contract is unambiguous contradicts its argument that the contract holds itself out to be a general liability policy when in fact it is not.

We need not examine whether Caruccio's affidavit is pure opinion, part opinion/part fact or purely factual because the affidavit played no part in our decision on the appropriateness of summary judgment in this case. The grant of summary judgment on the issue of illusory coverage is appropriate because coverage for liability arising from indirect bodily injury and property damage is provided for on the face of the policy. The grant of summary judgment on the issue of fraud is appropriate because (1) no representative of City ever read the policy so there was no reliance on the allegedly fraudulent and misleading language in the policy, and (2) no claim was ever submitted under the policy, making the intended scope of coverage irrelevant since City received some benefit and suffered no loss. The contents of Caruccio's affidavit did not impact upon these decisions.

### STATUTE OF LIMITATIONS

It is likewise unnecessary for us to respond to Western's allegation that City's action is barred by the statute of limitations for relief from fraud except to say that we disagree.

The opinion of the trial court is affirmed.

SHARPNACK, C.J., and GARRARD, J., concur.