**CINCINNATI INSURANCE COMPANY, Appellant–Third Party Defendant Below,**

**and**

**Rhonda L. Lamonte, Appellant–Defendant and Third Party Plaintiff Below,**

**v.**

**AMERISURE INSURANCE COMPANY, Appellee–Third Party Defendant Below.**

No. 57A03–9404–CV–164.

Court of Appeals of Indiana, Third District.

Dec. 6, 1994.

Rehearing Denied Feb. 20, 1995.

John F. Lyons, David R. Steiner, Barrett & McNagny, Fort Wayne, for Cincinnati Ins. Co.

Thomas C. Ewing, Carolyn M. Trier, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, Daniel F. Diggins, Emerick & Diggins, Kendallville, for Rhonda L. Lamonte.

Rick D. Meils, Meils Thompson Dietz & Congleton, Indianapolis, for appellee.

## OPINION

STATON, Judge.

Cincinnati Insurance Company and Rhonda Lamonte (collectively "Cincinnati") appeal from the trial court's grant of summary judgment in favor of Amerisure Insurance Company ("Amerisure"). Cincinnati raises five issues for our review which we consolidate into three and restate as follows:

I. Whether the trial court erred in denying coverage under Amerisure's Commercial Auto Policy.

II. Whether the trial court erred in denying coverage under Amerisure's umbrella liability policy.

III. Whether the Commercial Auto Policy set forth illusory coverage in violation of public policy.

We affirm.

The facts most favorable to the judgment reveal that Rhonda Lamonte ("Lamonte") was involved in an automobile accident while driving her 1987 Chevrolet Astrovan ("Astrovan"). Lamonte and her husband, James Lamonte, had joint ownership of the Astrovan. At the time of the accident, the Astrovan was leased to Reliable Tool and Machine Company, Inc. ("Reliable"). Lamonte was an employee of Reliable and a member of Reliable's Board of Directors.

Reliable procured two insurance policies from Amerisure: a Commercial Auto Policy and an umbrella liability policy issued through Michigan Mutual Insurance Company, a subsidiary of Amerisure.[1] Lamonte and her husband owned a personal liability umbrella policy with Cincinnati.

Lamonte filed a third party complaint against Amerisure and Cincinnati seeking a declaratory judgment for coverage.[2] Both Amerisure and Cincinnati filed motions for summary judgment. The trial court held that the policies issued by Amerisure specifically excluded coverage for the accident and granted Amerisure's motion. Cincinnati and Lamonte filed this joint appeal.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369, 1371. At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

■ When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Collins v. Covenant Mut. Ins. Co.* (1992), Ind.App., 604 N.E.2d 1190, 1194. We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

I.

*Coverage Under the Commercial Auto Policy*

■ Cincinnati contends that the Commercial Auto Policy Reliable procured with

---

1. Pursuant to the lease arrangement, Reliable was required to "provide for and pay for all liability and property damage insurance on said vehicle in an amount not to be less than the State and/or Federal minimum requirements." Record, p. 14.

2. Lamonte's third party complaint against Cincinnati and Amerisure arises out an action filed against her by Kenneth and Bonnie Gehring. The Gehrings brought a personal injury action against Lamonte for damages they incurred as a result of injuries sustained in the accident. The trial court bifurcated the two actions and transferred the insurance issues to the Noble County Superior Court on May 12, 1993.

Amerisure does not exclude coverage for the accident. The interpretation of an insurance policy, as with other contracts, is primarily a question of law for the court. *Tate v. Secura Ins.* (1992), Ind., 587 N.E.2d 665, 668. If the insurance policy language is clear and unambiguous, it should be given its plain and ordinary meaning. If there is an ambiguity, the policy should be interpreted most favorably to the insured. *Id.*

■ Insurers are free to limit insurance coverage to meet their needs, but all exceptions, limitations, and exclusions must be plainly expressed. *Allstate Ins. Co. v. United Farm Bureau Mutual* (1993), Ind.App., 618 N.E.2d 31, 33. If the exclusion or limitation is not clearly expressed, any doubts will be construed against the contract drafter. *Id.*

Cincinnati asserts that additions listed in an endorsement to the Commercial Auto Policy broadened coverage and superseded any exclusions within the body of the original policy.[3] Based upon this endorsement, Cincinnati contends that Amerisure provided coverage for Lamonte when she operated the Astrovan.

3. Cincinnati urges us to follow the rule in *Commercial Standard Ins. v. General Trucking* (1982), Ala., 423 So.2d 168, 170 in which the Supreme Court of Alabama determined that the listing of the vehicle in an endorsement to a policy was a specific action that superseded the literal definitions under the original language of the policy which excluded coverage. Cincinnati contends that this case offers an identical factual situation as *Commercial* and thus, we should apply the court's rule. We disagree.

In *Commercial,* a dispute arose regarding coverage between the insurance carrier for the owner/lessor of a leased vehicle and the insurance carrier of the lessee. An endorsement to a lessee's insurance policy listed the leased vehicle on the "Schedule of Automobiles" and showed that premiums were paid on the vehicle. *Id.* at 170. However, the policy itself excluded coverage for the owners of hired automobiles. *Id.* Here, the broadened coverage under the endorsement expressly excludes coverage of the Astrovan when operated by its owner and does not supersede any language in the body of the policy. Because the two cases are distinct, we need not address the issue of the applicability of this rule to this case.

4. Cincinnati also purports that the Commercial Auto Policy contains ambiguous language re-

The endorsement to the Commercial Auto Policy procured by Reliable was entitled: DRIVE OTHER CAR COVERAGE— BROADENED COVERAGE FOR NAMED INDIVIDUALS. Record, p. 24. Rhonda Lamonte was listed in the Schedule of covered individuals. *Id.* The policy states in pertinent part:

B. CHANGES IN LIABILITY COVERAGE

1. Any "auto" you [Reliable] don't own, hire or borrow is a covered "auto" for LIABILITY COVERAGE while being used by an individual named in the Schedule or by his or her spouse while a resident of the same household *except:*

a. Any "auto" owned by that individual or by any member of his or her household.

*Id.* (emphasis added).

■ The language of the endorsement unequivocally states that any auto Reliable does not own, hire or borrow is a covered auto while being used by an individual named in the schedule *unless* that individual owns the auto.[4] The record reveals that Lamonte owned the vehicle jointly with her husband.[5]

garding ownership and coverage of the vehicles listed in the endorsement to the policy. Ambiguity in an insurance contract exists only when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning. *Landis v. American Interinsurance Exchange* (1989), Ind.App., 542 N.E.2d 1351, 1353, *trans. dismissed.* An ambiguity does not exist simply because a controversy exists between the parties, each favoring an interpretation contrary to the other. *Id.*

Our review of the Commercial Auto Policy reveals that the language of the endorsement unambiguously states that an auto owned and operated by an individual named in the schedule will not be covered. Reasonably intelligent persons would not differ as to the meaning of this exception to the endorsement. *Landis, supra,* at 1353. Accordingly, we conclude that this language is clear and unambiguous and will give the policy its plain meaning.

5. Cincinnati contends that the exception is not applicable because the policy does not specifically exclude coverage for jointly owned vehicles. We disagree. The exception unambiguously states that any "auto" *owned* by an individual named in the schedule is not covered under the policy. The Astrovan is jointly owned by La-

Accordingly, we conclude that the Astrovan falls within this exception and is not a covered auto pursuant to the endorsement to the policy.[6]

## II.

### Coverage Under the Umbrella Liability Policy

■ Cincinnati contends that trial court erred in finding that Amerisure's umbrella liability policy did not provide coverage for the Astrovan.

Again, we note that the interpretation of an insurance policy, as with contracts, is primarily a question of law for the court. *Tate, supra,* at 668. If the insurance policy is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.*

The umbrella policy lists the Commercial Auto Policy in its Schedule of Underlying Insurance. Paragraph n of the umbrella policy excludes the following:

The liability of any officer, director, stockholder or employee of the named insured [Reliable] arising out of the ownership, maintenance or use of an auto unless a policy of 'underlying liability insurance' for the auto is listed in the Schedule of Underlying Insurance.

This exclusion does not apply when:

1) *The automobile is covered by another policy of 'underlying liability insurance'* and

2) To the extent the limits of the 'underlying liability insurance' equal or exceed

the limits shown in the Schedule of Underlying Insurance.

Record, p. 53 (emphasis added).

Cincinnati contends that the Commercial Auto Policy is "underlying liability insurance" pursuant to this exception to the exclusion listed in paragraph n and thus, the Astrovan is covered under the umbrella policy.

We reject this contention. Because we determined that the Astrovan was not a covered "auto" under the Commercial Auto Policy, the Astrovan cannot be "an automobile covered by another policy of underlying liability insurance" under paragraph n. We therefore conclude that the trial court correctly determined that coverage was excluded under the umbrella policy.[7]

## III.

### Illusory Coverage

■ Cincinnati asserts that the Commercial Auto Policy provides illusory coverage and is against public policy. We note that provisions in an insurance policy which are unambiguous when read within the policy as a whole, but in effect, provide only illusory coverage, should be enforced to satisfy the reasonable expectations of the parties. *Davidson v. Cincinnati Ins. Co.* (1991), Ind. App., 572 N.E.2d 502, 508, *trans. denied.*

■ Cincinnati states that Lamonte had a reasonable expectation of coverage and to deprive her of such coverage would violate public policy. We disagree.

Under the lease agreement, Reliable was required to procure insurance for the vehicle.

---

monte and her husband. Joint owners are "two or more persons who jointly *own* and hold title to property." Black's Law Dictionary 1260 (4th Ed.1968) (emphasis added). Lamonte *owned* the Astrovan. The fact that the vehicle was jointly owned does not affect the application of this exception to Lamonte. Thus, we conclude that Cincinnati's contention is without merit.

6. Cincinnati further contends that the lease arrangement between Lamonte and Reliable was an insured contract which was covered under the Commercial Auto Policy. The policy defines an insured contract as "[t]hat part of any contract or agreement entered into, as part of your business, by you or any of your employees per-

taining to the rental or lease of any [covered] 'auto'." Record, p. 35. Because we determined that the Astrovan was not a covered "auto" when operated by Lamonte, this contention is moot and we need not address it any further.

7. Cincinnati further contends that the umbrella policy also lists an insured as "[a]ny additional insured included in a scheduled policy of 'underlying liability insurance' and thus, Lamonte was covered under the umbrella policy." Record, p. 55. However, as noted above, the Astrovan was not covered by the Commercial Auto Policy (the underlying liability insurance) and thus, cannot be an additional insured under the umbrella policy. Accordingly, we reject this contention.

However, the policy clearly stated that coverage is excluded when the individual named in the Schedule is also the owner of the vehicle. As an employee, Lamonte could have operated any other vehicle named in the policy and would have been afforded coverage. The exception was only applicable when the operator of the vehicle also owned the vehicle. The policy provided coverage for the Astro-van in all other instances. Accordingly, we reject Cincinnati's contention that the Commercial Auto Policy provided only illusory coverage.

Affirmed.

GARRARD and ROBERTSON, JJ., concur.