MONTICELLO INSURANCE COMPANY, Plaintiff,

v.

MIKE'S SPEEDWAY LOUNGE, INC., Michelle Gaines, as personal representative of Ronnie Woodard, Deceased, Defendants.

Cause No. IP 95–1067–C H/G.

United States District Court, S.D. Indiana, Indianapolis Division.

Aug. 5, 1996.

---

2. This is the same case, but for some reason different issues were tried in different districts.

Thomas J. Campbell, Locke Reynolds Boyd & Weisell, Indianapolis, IN, for plaintiff.

Jack Crawford, Crawford & Rader, Indianapolis, IN, for defendant Mike's Speedway Lounge, Inc.

Steven A. Spence, Indianapolis, IN, for defendant Michelle Gaines.

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

HAMILTON, District Judge.

The central issue in this case is whether an insurance company may sell to a tavern a general commercial liability insurance policy that excludes coverage for losses "arising out of or in connection with the manufacturing, selling, distributing, serving of furnishing of any alcoholic beverages." As explained below, the court concludes that under Indiana law, this exclusion rendered the purchased liability "coverage" illusory. The plaintiff insurer's motion for summary judgment is therefore denied.

## Facts

Plaintiff Monticello Insurance Company ("Monticello") sold insurance to Mike's Speedway Lounge, Inc. ("Mike's"), a neighborhood tavern. Monticello contracted with Mike's to provide commercial general liability coverage from August 17, 1993 to August 17, 1994. On July 24, 1994, Ronnie Woodard and David Smith were patrons at Mike's. In the early morning hours of July 25, 1994, Smith attacked and killed Woodard in the parking lot adjacent to Mike's. Ronnie Woodard's personal representative, Michelle Gaines ("Gaines"), filed suit against Mike's in the Marion Superior Court on July 14, 1995. On August 11, 1995, Monticello filed its complaint for declaratory judgment. Monticello seeks a judgment from this court declaring that the policy it issued to Mike's affords no insurance coverage to Mike's for any injuries or damages alleged by Gaines in the suit that Gaines filed against Mike's.

Monticello's original insurance policy for Mike's carried effective dates of August 17, 1993 through August 17, 1994.[1] (Monticello issued a renewal policy effective from August 17, 1994 through August 17, 1995.) The original Monticello policy provided commercial general · liability coverage and described Mike's business as follows: "Restaurant— with sale of alcoholic beverages that are less than 75% of total annual gross receipts— without dance floor." The insurance policy also refers to Mike's as a "restaurant and bar." Monticello collected from Mike's an annual premium of $1,751.25. Of the annual premium, $910 was attributed to commercial general liability coverage. Monticello's policy also provided commercial property coverage and commercial crime coverage to Mike's.

Monticello argues that three exclusions contained in the governing policy apply to prevent insurance coverage in the case brought by Gaines against Mike's. The first is the "assault and battery" exclusion:

1. Monticello submitted insurance policy documents as Exhibit A to the complaint, and as Exhibit A to the Affidavit of Roland Hannah. With one minor exception, these two documents are identical. Hannah Ex. A has affixed to the

## ASSAULT AND BATTERY EXCLUSION

It is agreed that the insurance does not apply to bodily injury or property damage arising out of assault & battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

The assault and battery exclusion is located on an endorsement page preceding the main body of the insurance policy. Effective endorsements are listed on declarations pages at the beginning of the policy by reference to code numbers found at the bottom left corner of each endorsement. The assault and battery exclusion endorsement contains the code, M4018 and appears at page 14 of Hannah Exhibit A.

The second exclusion is the "absolute liquor" exclusion:

## EXCLUSION—ABSOLUTE LIQUOR

In consideration of the premium charged, it is understood and agreed that coverage under this policy does not apply to bodily injury nor property damage, arising out of or in connection with the manufacturing, selling, distributing, serving or furnishing of any alcoholic beverages.

The absolute liquor exclusion is also an endorsement preceding the body of the policy. The absolute liquor exclusion carries the code, M4005 and appears at page 14 of Hannah Exhibit A.

The third exclusion is the "dram shop" exclusion:

2. **Exclusions.**

This insurance does not apply to:

&ast; &ast; &ast; &ast; &ast; &ast;

c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

bottom right corner of each page a document production sticker bearing a sequential number, beginning with 1 and running consecutively to 57.

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

Unlike the other two exclusions at issue, the dram shop exclusion is found within the main body of the insurance policy, at page 31 of Hannah Exhibit A.

Gaines filed suit in Marion Superior Court against Mike's setting forth three separate counts. First, Gaines alleged that Mike's was negligent in "failing to have and to keep its business premises in a reasonably safe condition." Second, Gaines alleged that Mike's furnished alcoholic beverages to Smith when Smith was visibly intoxicated, and that Smith then "killed, battered and beat Ronnie Woodard until he died." Third, Gaines alleged that Mike's, by and through its employees, became aware that Woodard was being beaten on its premises and negligently failed to protect Woodard from further harm.

### Standard for Summary Judgment

Summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a jury to find in favor of the non-moving party on the particular issue. *E.g., Methodist Medical Ctr. v. American Medical Sec. Inc.*, 38 F.3d 316, 319 (7th Cir.1994). Interpretation of a written contract, such as a contract of insurance, is ordinarily a question of law suitable for resolution on motion for summary judgment. *E.g., Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind.1992); *Wayne Township Bd. of Sch. Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205, 1208 (Ind.App.1995); accord, *Hurst–Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995). When the question presented is whether an insurance policy provides liability coverage for a particular claim or lawsuit, the central material facts are ordinarily the terms of the written contract and the contents of the plaintiff's allegations in the underlying litigation. *E.g., Wayne Township Bd. of Sch. Comm'rs*, 650 N.E.2d at 1208. Here the parties do not dispute the contents of the allegations in the suit filed by Gaines. The parties disagree about the legal conclusions to be drawn from the terms of insurance contract as applied to the underlying lawsuit. Gaines also asserts there is a factual dispute concerning the contents of the policy in effect on July 24, 1994. Mike's asserts there are factual disputes concerning Mr. Lewis' reasonable expectation as to the insurance coverage he purchased from Monticello.

### Contents of the Insurance Policy

■ In response to Monticello's motion for summary judgment, Gaines pursues only one line of argument. Gaines disputes whether the insurance policy in effect on July 24–25, 1994, contained the absolute liquor and assault and battery exclusions. Mike's has not raised this issue. In fact, in its original answer, Mike's admitted that the policy attached as Exhibit A to Monticello's complaint was a true and accurate copy of the policy in effect at all relevant times. (Mike's Answer ¶ 5) In an amended answer, Mike's later stated that it was without sufficient knowledge or belief to determine whether Exhibit A to Monticello's complaint was a true and accurate copy of the pertinent provisions of the policy. (Mike's Amended Answer ¶ 5) On Monticello's motion for summary judgment, Mike's argues that the absolute liquor exclusion renders coverage under the policy illusory. Mike's sole argument in response to the motion for summary judgment depends on the presence of the absolute liquor exclusion in the policy.

The co-defendants in this case have taken different and contradictory paths in their efforts to defeat Monticello's motion for summary judgment. Mike's argues that the absolute liquor exclusion renders the general liability insurance coverage illusory. With the aid of an affidavit from Richard Lewis, the owner of Mike's, Gaines argues that the

absolute liquor and assault and battery exclusions were not even a part of the contract for insurance that was in effect at the relevant time. Thus, before reaching the illusory coverage issue, the court must first consider whether the policy contained the absolute liquor and assault and battery exclusions.

As noted above, the absolute liquor and assault and battery exclusions appear in the documents submitted by Monticello as endorsements following the declarations pages and preceding the body of the insurance policy. They do not appear in the policy attached as an exhibit to the Affidavit of Richard Lewis submitted by Gaines. Gaines argues that the assault and battery and absolute liquor exclusions were not part of the policy in effect from August 17, 1993 to August 17, 1994, but were added as endorsements to the renewal policy, which was effective from August 17, 1994 to August 17, 1995. Monticello tries to avoid the issue by suggesting that because Mike's and Monticello signed a contract for renewal of insurance on July 5, 1994, Mike's "thereby became the insured on Renewing Policy No. MCK 610963, with a policy period from August 17, 1994 to August 17, 1995." (Monticello's Opening Brief at 4) Monticello also argues that Gaines has failed to raise a genuine issue of material fact as to the contents of the effective insurance policy because the Lewis Affidavit fails to meet the evidentiary standards of Fed.R.Civ.P. 56(e).[2]

The court agrees with the latter point. Gaines submitted an insurance policy to the court as an exhibit to the Affidavit of Richard Lewis. That affidavit states that the exhibit is a "true, accurate, genuine and complete copy of the aforesaid Monticello Insurance Co. Policy No. MK 278566."[3] (Lewis Aff. submitted by Gaines ¶ 5) It should be noted that the exhibit to the Lewis Affidavit submitted by Gaines appears to be a photocopy of part of the document submitted by Monticello as Hannah Exhibit A. The document submitted by Gaines includes the sequential numbering that appears on Hannah Exhibit

A, but the Gaines copy commences at page 23 and continues sequentially through page 57. The Lewis Affidavit exhibit therefore contains no renewal certificate, no declarations pages, and no endorsements.

Gaines relies on the Lewis Affidavit to question whether pages 1 through 10 of Hannah Exhibit A were part of the original policy. (Lewis Aff. submitted by Gaines ¶ 6) Those pages contain the renewal certificate and declarations pages. However, Mr. Lewis' affidavit does not specifically allege that the endorsement page containing the assault and battery and absolute liquor exclusions (which appear at page 14 of Hannah Ex. A) was not part of the relevant policy. (Lewis Aff. submitted by Gaines, ¶ 6) Instead, Mr. Lewis states:

> During the period from July 12, 1993 to August 17, 1994, *I was unaware* of any endorsements entitled "Assault and Battery Exclusion" or "Exclusion—Absolute Liquor" and *I do not believe* that they were part of Mike's Speedway Lounge, Inc.'s original insurance contract during the said period.

(Lewis Aff. submitted by Gaines ¶ 9) (emphasis added). While this statement may be relevant to Mr. Lewis' reasonable expectation about the scope of coverage (discussed below), it does not set forth specific facts showing that there is a genuine issue for trial about whether the written policy in fact contained the absolute liquor and assault and battery exclusions. See Fed.R.Civ.P. 56(e). Gaines' submission of an obviously incomplete copy of the insurance policy (the policy submitted by Gaines contains no declarations or endorsements of any kind) undermines the attempt to raise a genuine issue of material fact. There is no genuine issue concerning the contents of the applicable Monticello policy. The policy is the document attached to the complaint, which contains all three of the exclusions upon which Monticello relies.

---

2. Monticello filed a motion to strike portions of the two affidavits signed by Richard Lewis. That motion has been denied by separate order.

3. Gaines argues that the initial policy carried Policy No. MK 278566 and the renewal policy carried Policy No. MCK 610963. Mike's and Monticello mention only Policy No. MCK 610963.

### Illusory Coverage Under Indiana Law

Indiana law governs the interpretation of the Monticello policy, so the task for this court is to decide issues of Indiana law as the court believes the Supreme Court of Indiana would decide them. Under Indiana law, words in an insurance policy should be given their plain and ordinary meaning whenever possible. See *Tate,* 587 N.E.2d at 668; *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.,* 40 F.3d 146, 151 (7th Cir.1994). Generally, ambiguous language in an insurance contract must be construed in favor of the insured, and language is ambiguous if reasonable persons may honestly differ as to its meaning, at least as applied to the particular situation. See *Eli Lilly & Co. v. Home Ins. Co.,* 482 N.E.2d 467, 470 (Ind.1985); *Flanders Elec. Motor,* 40 F.3d at 151. Exclusionary provisions in insurance contracts are subject to this principle. As one Indiana court has said: "An exclusion will be given effect only if it unmistakably brings the act or omission within its scope." *Evans v. National Life Accident Ins. Co.,* 467 N.E.2d 1216, 1219 (Ind.App.1984) (citation omitted). See also *American Nat'l Fire Ins. Co. v. Rose Acre Farms, Inc.,* 846 F.Supp. 731, 736 (S.D.Ind.1994) (citing *Evans* among other cases); *Indiana Ins. Cos. v. Granite State Ins. Co.,* 689 F.Supp. 1549, 1557 (S.D.Ind. 1988) (citing *Evans*).

■ Indiana courts have also held that insurance policies providing illusory coverage violate public policy. An insurance policy provides illusory coverage when "a premium was paid for coverage which would not pay benefits under any reasonably expected set of circumstances." *Meridian Mut. Ins. Co. v. Richie,* 540 N.E.2d 27, 30 (Ind.1989), *vacated,* 544 N.E.2d 488 (Ind.1989) (on rehearing the court found that it had misinterpreted the policy and that the policy was not illusory); see also *City of Lawrence v. Western World Ins. Co., Inc.,* 626 N.E.2d 477, 479–80 (Ind.App.1993). "In Indiana, illusory insurance coverage is disfavored as a matter of public policy." *Fidelity & Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co.,* 25 F.3d 484, 490 (7th Cir.1994); see also *Landis v. American Interinsurance Exchange,* 542 N.E.2d 1351, 1354 (Ind.App.1989). When a policy provides only illusory coverage, Indiana courts will give effect to the reasonable expectation of the insured. *Landis,* 542 N.E.2d at 1354; see also *Everett I. Brown Co.,* 25 F.3d at 490; *Cincinnati Ins. Co. v. Amerisure Ins. Co.,* 644 N.E.2d 136, 140 (Ind.App.1994). "It is the public policy of this State to allow an insured to recover his reasonable expectation when an insurer has provided illusory coverage." *Western Reserve Mut. Casualty Co. v. Holland,* 666 N.E.2d 966, 970 (Ind.App.1996) (coverage illusory because insured could recover underinsured motorist benefits if (1) the tortfeasor had coverage; (2) the coverage was less than $25,000; and (3) the coverage was not less than $25,000).

Indiana courts have often recognized that policies providing illusory coverage should be interpreted to give effect to the reasonable expectation of the insured. *E.g., Richie,* 540 N.E.2d 27, *vacated,* 544 N.E.2d 488; *City of Lawrence,* 626 N.E.2d 477; *Amerisure Ins.,* 644 N.E.2d 136; *Jones v. State Farm Mut. Auto. Ins. Co.,* 635 N.E.2d 200, 202 (Ind.App. 1994). Several Indiana decisions have applied the illusory coverage doctrine to benefit an insured. *E.g., Holland,* 666 N.E.2d 966; *Landis,* 542 N.E.2d 1351; *Richie,* 540 N.E.2d 27, *vacated,* 544 N.E.2d 488; *Davidson v. Cincinnati Ins. Co.,* 572 N.E.2d 502 (Ind. App.1991) (general liability and umbrella policies providing coverage for malicious prosecution and slander, yet excluding coverage for expected or intended consequences provided only illusory coverage). Other Indiana cases have implicitly recognized the illusory coverage doctrine when finding that insurance coverage was not illusory. *E.g., Aetna Life & Casualty v. Patrick Indus., Inc.,* 645 N.E.2d 656, 662 (Ind.App.1995); *Lexington Ins. Co. v. American Healthcare Providers,* 621 N.E.2d 332, 339 (Ind.App.1993); *Wayne Township Bd. of Sch. Comm'rs,* 650 N.E.2d at 1212.

Recent cases also show that Indiana courts may determine that language in insurance policies is ambiguous where the language might be interpreted so as to negate virtually all coverage for the insured. In *American States Ins. Co. v. Kiger,* the Indiana Supreme Court examined an insurance policy issued to

a gasoline station. 662 N.E.2d 945 (Ind. 1996). In that case, the policy contained a pollution exclusion clause, which the insurance company argued precluded coverage for damages caused by leaking gasoline. *Id.* at 948. The court wrote:

> We begin by noting one oddity in American States' position. That an insurance company would sell a "garage policy" to a gas station when that policy specifically excluded the major source of potential liability. is, to say the least, strange. It remains true, however, that if the· policy clearly excludes such coverage, that contract will be enforced.

*Id.* The court went on to explain its interpretation of the pollution exclusion:

> Clearly, this clause cannot be read literally as it would negate virtually all coverage. For example, if a visitor slips on a grease spill then, since grease is a "chemical," there would be, no insurance coverage. Accordingly, this clause requires interpretation ... We are particularly troubled by the interpretation offered by American States, as it makes it appear that Kiger was sold a policy that provided no coverage for a large segment of the gas station's business operations. In addition, the language excludes coverage for damage caused by "alleged discharge[s]" of "pollutants," which could be understood to mean that a mere allegation of pollution discharge could defeat all coverage.·

*Id.* at 948–49. The court held that because the term "pollutant" did not obviously include gasoline, the provision was ambiguous. The court therefore interpreted the policy against the insurer, holding that the insurance company was required to cover gasoline contamination damage. *Id.* at 949.

In *Great Lakes Chem. Corp. v. International Surplus Lines Ins. Co.*, the Indiana Court of Appeals employed a similar approach. Great Lakes manufactured pesticide products containing ethylene dibromide (EDB) and purchased liability insurance from International Surplus Lines Insurance Company. *Great Lakes Chem. Corp. v. International Surplus Lines Ins. Co.*, 638 N.E.2d 847, 849 (Ind.App.1994). After the Environmental Protection Agency banned the use of EDB, various parties brought claims for damages against Great Lakes claiming soil and groundwater contamination by EDB. The insurer denied coverage, arguing that EDB was a pollutant and that coverage was precluded by pollution exclusion clauses in the policy. The court explained:

> Great Lakes, like most manufacturers, purchased liability insurance to protect itself from damage caused by its products. Here, because of the nature of the product and its intended use, the damage caused by EDB was environmental pollution. However, simply because the damage alleged in the underlying lawsuits is environmental damage does not mean that the pollution exclusion clauses should automatically apply to exclude coverage.... To hold that the pollution exclusion clauses bar coverage to Great Lakes for the EDB claims would render the insurance coverage purchased by Great Lakes illusory. We hold that under the facts of this case, the EDB claims against Great Lakes are not excluded by the policies' pollution exclusion clauses.

*Id.* at 851. The court then reversed the trial court's ruling and entered summary judgment for Great Lakes, the insured. *Id.* With these lines of Indiana cases in mind, the court will examine the insurance policy at issue in this case.

### The Absolute Liquor Exclusion

■ Mike's illusory coverage argument centers on the absolute liquor exclusion, which excludes coverage for bodily injury or property damage "arising out of or in connection with the manufacturing, selling, distributing, serving or furnishing of any alcoholic beverages." Mike's argues that because it is a tavern, the absolute liquor exclusion would preclude liability coverage· under any reasonably expected set of circumstances. For example, Mike's argues that the provision would exclude coverage for a claim made by a patron who slipped and fell after consuming alcoholic beverages. Moreover, Mike's argues, it would be difficult to conceive of a bodily injury accident at the tavern that would not be "connected with" the selling,

distributing, serving or furnishing of alcoholic beverages. That is Mike's business, after all. And Monticello collected from Mike's a premium for commercial general liability insurance.

■ Monticello offers several arguments in rebuttal. First, Monticello contends that Mike's interpretation of the absolute liquor exclusion "ignores the language of the [dram shop exclusion] which excludes coverage for injury claims by reason of causing or contributing to intoxication or furnishing alcohol to a person under the influence of alcohol." (Plaintiff's Reply Brief at 3) By this argument, Monticello seems to suggest that the absolute liquor exclusion should be given a limiting construction to give it the same scope as the dram shop exclusion. The argument is not persuasive. The absolute liquor exclusion does not contain any limiting language that would support the proposed construction. The two alcohol exclusions make no reference to each other, and they appear in different parts of the insurance policy— one as an endorsement at the front of the policy (absolute liquor), and the other as part of the commercial general liability coverage form (dram shop). Monticello's interpretation would also make the two exclusions redundant.

Second, Monticello argues that such "alcohol exclusions" are commonly included in liability policies sold to businesses that serve alcohol. In the cases Monticello cites, however, the exclusions used additional language that allowed the courts to construe the exclusions as applying only to claims alleging that the business had violated a law. See *Williams v. United States Fidelity & Guar. Co.*, 854 F.2d 106, 108 (5th Cir.1988); *Mitcheson v. Izdepski*, 32 Mass.App. 903, 585 N.E.2d 743, 745 (Mass.App.1992); *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So.2d 938, 941–42 (Fla.1979). The absolute alcohol exclusion in the Monticello policy contains no such limitation nor any language that could support such a limitation. Monticello has not identified any decisions finding that an exclusion like the one in this policy could be enforced against a tavern.

Monticello also attempts to demonstrate that coverage is not illusory by offering an example of a situation where Mike's would benefit from coverage under its policy. Monticello asserts that "coverage would be afforded for a patron's claim that Mike's negligently failed to remove ice from its sidewalk or permitted patrons to walk on a slippery floor. Such a claim does not arise out of the sale of alcoholic beverages." (Plaintiff's Reply Brief at 3) Perhaps not, but the relevant language written by plaintiff in its policy is considerably broader. The exclusion applies to losses "arising out of or in connection with the manufacturing, selling, distributing, serving or furnishing of any alcoholic beverages." When the insured is in business as a tavern, it requires no stretch of the imagination or language to find that such a claim by an injured patron would be "in connection with" the tavern's business.

■ In any event, an insurer cannot avoid an illusory coverage problem by simply conceiving of a single hypothetical situation to which coverage would apply. The Indiana cases demonstrate that under Indiana law, illusory coverage is a matter of degree, not absolutes. In *Richie*, the Supreme Court of Indiana found that coverage was illusory where the likelihood of coverage was considered "sufficiently remote to be deemed illusory." 540 N.E.2d at 30. In *Davidson*, the Indiana Court of Appeals considered an insurance policy that purported to provide coverage for personal injury occurrences, including malicious prosecution, libel, slander, and defamation. However, the policy defined covered "occurrences" to include only accidents, happenings, and events that occur unexpectedly or unintentionally. *Davidson*, 572 N.E.2d at 506–07. The court examined whether an insured could ever collect benefits for "unintentional" malicious prosecution or slander:

> Although the argument can be made that Davidson could recover when malicious prosecution or slander resulted from recklessness, the possibility of Davidson recovering under these circumstances is very remote. As said before, *most cases* involving malicious prosecution and slander are a result of an intentional wrongdoing.

*Id.* at 508 (emphasis added). The court concluded that the policy provided only illusory

coverage and upheld the reasonable expectations of the insured by requiring the insurance company to defend Davidson. *Id.* Similarly here, while there might be some possibility of claims against a tavern that cannot be said to have arisen out of or to be connected with the business of selling, distributing, serving, or furnishing alcoholic beverages, the prospect seems to be "sufficiently remote" as to warrant the conclusion that this coverage was illusory.

As discussed above, the Indiana courts have recently concluded that policy language in exclusions was ambiguous where the language might effectively nullify virtually all coverage for the insured. See *American States Ins. Co. v. Kiger,* 662 N.E.2d at 948; *Great Lakes Chem. Corp. v. International Surplus Lines Ins. Co.,* 638 N.E.2d at 851. Monticello has not argued that its absolute liquor exclusion is ambiguous, but the court has considered that possibility in light of these Indiana cases. As the Supreme Court of Indiana said in *Kiger:* "That an insurance company would sell a 'garage policy' to a gas station when that policy specifically excluded the major source of potential liability is, to say the least, strange. It remains true, however, that if the policy clearly excludes such coverage, that contract will be enforced." 662 N.E.2d at 948. The problem is that the absolute liquor exclusion in Monticello's policy is worded so broadly as to exclude coverage for essentially all potential claims and so as to defy reasonable limiting interpretation. It applies not only to claims for bodily injury or property damage "arising out of" the sale of alcoholic beverages, but also to claims for bodily injury or property damage "in connection with" the manufacturing, selling, distributing, serving or furnishing of any alcoholic beverages. If Mike's had sold, served or furnished alcohol to the hypothetical patron who slipped on an icy sidewalk (whether the patron consumed alcoholic beverages or not), the absolute liquor exclusion would preclude coverage. Even if Mike's had not sold, served or furnished alcohol to the hypothetical patron, any bodily injury or property damage sustained by a tavern patron could reasonably be said to have occurred "in connection with" Mike's entire business of selling alcoholic beverages.

Monticello issued an insurance policy purporting to provide "commercial general liability coverage" to Mike's. (Hannah Aff. Ex. A at 4) Monticello also classified Mike's commercial business as a "Restaurant-with sale of alcoholic beverages that are less than 75% of total annual gross receipts—without dance floor." (Hannah Aff. Ex. A at 4) Monticello issued a commercial general liability policy to a tavern and incorporated an exclusion from coverage that would apply to virtually any claim the insured might reasonably be expected to file. Under these circumstances, the prospects for coverage are "sufficiently remote" that the liability coverage must be deemed illusory.

**Reasonable Expectation of the Insured**

Under Indiana law, an insurance policy that provides only illusory coverage will be enforced so as to give effect to the reasonable expectation of the insured. *Landis,* 542 N.E.2d at 1354. As explained by Professor Keeton:

> The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.

Keeton, *Insurance Law,* § 6.3(a), p. 351. Monticello would still like to take advantage of the assault and battery and dram shop exclusions in its policy. The complaint filed by Gaines in the underlying lawsuit alleges that Mike's furnished alcoholic beverages to Smith when Smith was visibly intoxicated, and that Smith then "killed, battered and beat Ronnie Woodard until he died." Gaines' allegations clearly fall within the parameters of the assault and battery exclusion and the dram shop exclusion in the Monticello policy.

Monticello points out that courts have interpreted and enforced exclusions either identical or substantially similar to these two exclusions. For example, in one case involving an assault and battery exclusion identical to the one in the Monticello policy, the insurance company filed a declaratory judgment action seeking to deny coverage to a nightclub that had been sued after a patron was attacked by other patrons. *Essex Ins. Co. v.*

*Stage 2, Inc.,* 14 F.3d 1178 (7th Cir.1994) (Illinois law). The trial court granted summary judgment to the insurer on the basis of the assault and battery exclusion. The Seventh Circuit affirmed that decision on appeal. *Id.* at 1183; see also *United Nat'l Ins. Co. v. Entertainment Group, Inc.,* 945 F.2d 210 (7th Cir.1991) (theater denied coverage under Illinois law for rape of patron on basis of a substantially similar assault and battery exclusion).

Monticello has also cited authority from other jurisdictions interpreting and enforcing dram shop exclusions to deny coverage to establishments in the business of furnishing alcoholic beverages. See, *e.g., Sheffield Ins. Co. v. Lighthouse Properties, Inc.,* 252 Mont. 321, 828 P.2d 1369 (1992) (affirming summary judgment for insurer). Assault and battery and dram shop exclusions either identical or substantially similar to those in the Monticello policy have been enforced against insureds by other courts.

■ The assault and battery and dram shop exclusions do not render coverage under the Monticello policy illusory. The issue here is whether, as a matter of law, Monticello may rely on these other exclusions to defeat coverage under a policy that provided only illusory liability coverage from the beginning. Indiana cases dealing with illusory coverage do not provide specific guidance on this question, but the general principles applied in those cases indicate that Indiana courts would not permit Monticello to take advantage of these other exclusions, at least as a matter of law, when there is evidence that the insured reasonably expected coverage to apply.

First, recall that Indiana courts treat illusory insurance coverage as a violation of public policy. See *e.g., Everett I. Brown Co.,* 25 F.3d at 490; *Holland,* 666 N.E.2d at 970. From that perspective, an insurance company that has sold illusory coverage is not likely to receive a sympathetic audience for its arguments that other exclusions nevertheless still bar coverage. Second, the Indiana courts have repeatedly said that when a poli-

cy provides only illusory coverage, the courts will enforce the reasonable expectation of the insured. See *e.g., Holland,* 666 N.E.2d at 970; *Landis,* 542 N.E.2d at 1354. There is no indication that Indiana courts are interested in enforcing other fine print in an insurance policy that has already been deemed illusory and contrary to public policy. The Indiana courts therefore appear unlikely to adopt Monticello's approach, which would encourage (or at least not penalize) insurance companies for selling illusory policies that erect a series of additional barriers to defeat the reasonable expectation of the insured.

■ The issue therefore becomes whether the insured could reasonably have expected Monticello to cover and/or defend the claims arising out of Ronnie Woodard's death. In order to defeat Monticello's motion for summary judgment, defendants must raise a genuine issue of material fact as to whether Mike's reasonably expected its commercial general liability insurance to cover incidents like the July 25, 1994, attack on Woodard.

Richard E. Lewis, president and owner of Mike's, signed two affidavits, one submitted by Gaines, the other submitted by Mike's. Those affidavits set forth Mr. Lewis' expectation about the insurance coverage he thought he had purchased from Monticello.[4] Mr. Lewis explains: "it was my understanding that my insurance policy provided liability coverage for both assault and battery incidents that occurred on my premises and liability for any claims against my business resulting from the furnishing of alcoholic beverages." (Lewis Aff. submitted by Mike's, ¶ 5) Mr. Lewis further explains:

> I entered into the aforesaid insurance contract on behalf of Mike's Speedway Lounge, Inc. with Monticello Insurance Co. for the purpose, among other things, of protecting Mike's Speedway Lounge, Inc. from potential liability in the event that a customer was injured, for any reason, while on the premises.

(Lewis Aff. submitted by Gaines, ¶ 7)

Monticello argues in its reply brief: "Given the plain language of the Policy, this alleged

---

4. Monticello filed a motion to strike both Lewis affidavits. Monticello argues that the key paragraphs of the two affidavits fail to meet the standard set in Fed.R.Civ.P. 56(e). By separate order issued today, the court denies plaintiff's motion to strike.

expectation [of coverage] cannot be deemed reasonable." (Plaintiff's Reply Brief at 4) However, Mr. Lewis purchased a policy from Monticello that purported to provide commercial general liability coverage for a tavern. The Monticello policy classified Mike's as a "Restaurant—with sale of alcoholic beverages that are less than 75% of total annual gross receipts—without dance floor." (Hannah Aff.Ex. A at 4) Mr. Lewis paid $910 annually for commercial general liability coverage. It is not unreasonable, at least as a matter of law, for a tavern owner to expect that his general liability coverage would provide insurance benefits in the event that patrons suffered personal injury on the premises even under the circumstances alleged in Gaines' complaint.

Mike's has raised a genuine issue of material fact on the question of its reasonable expectation of coverage. Mr. Lewis contracted to buy commercial general liability coverage for a tavern. His affidavit provides evidence that he aimed to obtain insurance against the risk that patrons would suffer injury on the premises. Mr. Lewis explains that he purchased insurance in order to protect Mike's from liability resulting from the business of furnishing alcoholic beverages to patrons. The policy on its face purports to provide commercial general liability coverage for a tavern, yet also purports to exclude from coverage any personal injury and property damage claims "connected with" the selling, distributing, manufacturing, or furnishing of alcoholic beverages. The policy language in and of itself is sufficient to create a genuine issue of material fact as to Mr. Lewis' reasonable expectation of insurance coverage.

### Conclusion

Monticello sold commercial general liability coverage to Mike's, a tavern. Monticello incorporated into the insurance policy an exclusion that sweeps so broadly as to insulate Monticello from paying benefits under any reasonably expected set of circumstances. Monticello's insurance policy affords only illusory coverage to Mike's. Because the policy provides only illusory coverage, the court will interpret the policy so as to give effect to the reasonable expectation of the insured.

The defendants have raised a genuine issue of material fact as to Mike's reasonable expectation of insurance coverage. Therefore, the court DENIES plaintiff's motion for summary judgment.

So ordered.