COURT
OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO.
2-01-145-CV
 
ROBERT L. VANDEVENTER,       
           
           
           
           
APPELLANTS
DUANE D. WOODROW,
AND B. LEGARE WALPOLE, JR.
V.
ALL AMERICAN LIFE & CASUALTY       
           
           
           
    APPELLEE
COMPANY N/K/A ALL AMERICAN
LIFE INSURANCE COMPANY
------------
FROM THE 17
TH DISTRICT COURT OF TARRANT
COUNTY
------------
OPINION
------------
I. INTRODUCTION
This case involves an insurance dispute
over an assumption agreement whereby a block of disability policies was
transferred and sold by the insurer that issued the policies to another insurer
that later cancelled them. Appellants Robert L. Vandeventer, Duane D. Woodrow,
and B. Legare Walpole, Jr. appeal from the trial court's grant of summary
judgment to Appellee All American Life & Casualty Company n/k/a All American
Life Insurance Company ("All American").
II. ISSUES
Appellants raise three issues on appeal in
support of their position that the trial court erred in granting All American's
motion for summary judgment. First, Appellants contend that All American failed
to establish as a matter of law its affirmative defense that the transfer of
Appellants' disability policies to American Insurance Company of Texas ("AICT")
created a "novation," releasing All American from any liability on the
policies and thereby barring recovery under the theories of recovery pleaded by
Appellants. Second, Appellants argue that they raised material issues of fact on
their claims of damages for breach of contract and rescission or reimbursement
of premiums for "illusory contract." Finally, Appellants complain that
their claim of breach of the duty of good faith and fair dealing was not barred
as a matter of law and that they raised an issue of material fact as to that
claim by introducing evidence that All American transferred their policies to a
company with inadequate assets and financial capability and failed to disclose
that AICT lacked such assets or capability. We reverse and remand the trial
court's grant of All American's motion for summary judgment in part and affirm
in part.
III. FACTUAL &
PROCEDURAL HISTORY
In 1969, All American began selling
Farmers' and Ranchers' Disability, Accident and Health Insurance Policies. For
an additional premium, an insured could obtain a "Premium Return Benefit
Rider," providing that, if the insured made no claims during a ten-year
period of the policy, All American would refund to the insured eighty percent of
the premiums paid during that period. The benefit rider also provided for a
lesser refund of eighty percent of the premiums paid during a ten-year period
minus the amount of claims paid if the insured made claims not greater than
twenty-five percent of the ten-year premium amount.
Appellant Vandeventer, a resident of
Illinois, purchased a disability policy and benefit rider from All American in
1969. He paid premiums from September of 1969 to September of 1989, made no
claims, and received a return of eighty percent of premiums paid during those
two ten-year periods. Appellant Woodrow, a resident of Indiana, also purchased
his disability policy and benefit rider from All American in 1969. He paid
premiums until October 1979, with one claim in 1972, and received a refund of
eighty percent of premiums paid for the first ten-year period, less the amount
of the 1972 claim. He paid his premiums for the second ten-year period and
received a refund of eighty percent of premiums paid for that period in October
1989. Appellant Walpole, a resident of South Carolina, purchased his policy and
rider from All American in 1971, likewise made premium payments for the two
initial ten-year periods, had no claims, and was refunded eighty percent of the
premiums paid for those periods.
Effective September 30, 1989, All American
entered into an agreement with AICT entitled "Contract of Sale of Accident
and Health Insurance Policies and Assumption Agreement" ("Assumption
Agreement"), providing for the sale and transfer of its existing Farmers'
and Ranchers' Disability, Accident and Health Insurance Policies to AICT,
including the policies previously sold to Appellants. Under the Assumption
Agreement, All American "agree[d] to transfer, and AICT . . . assumed . . .
one hundred percent (100%) of [All American's] liability under the policies . .
. for all losses" on or after the date of sale, "subject to the terms,
provisions and duration of such policies."
The Assumption Agreement further provided
that, in the event the policyholders did not accept the assumption of their
policies by AICT, All American was required to remain liable on the policies.
All American also "agree[d] to cede under an indemnity agreement 100% quota
share interest in said reinsurance policies." AICT agreed to pay a ceding
commission to All American in the amount of $3,500,000.
Under section seven of the Assumption
Agreement, entitled "Reserves," All American agreed to pay to AICT, on
the effective date of the agreement, the amount of the estimated reserves,
including the "return premium" reserves for payment under the benefit
riders totaling $9,622,345. By section 11 of the Assumption Agreement,

 AICT agree[d] to indemnify and hold [All
 American] harmless against any and all losses, claims, demands, actions,
 causes of action, costs or fees arising out of or related to the insurance
 provided under the policies incurred on or after [the effective date of the
 agreement], including but not limited to, punitive or compensatory damages . .
 . and attorneys fees of any such actions against [All American].

AICT was not, however, to be held liable
for any such claims attributable to actions by All American before the effective
date.
Vandeventer, Woodrow, and Walpole received
no advance notice of the sale of their policies by All American to AICT in 1989,
nor were they contacted in advance by either company for their assent to the
transfer of their policies to AICT. After the effective date of the sale, each
received a letter written on the letterhead of "The National Insurance
Group Insurance Companies," notifying them that an agreement had been
reached between AICT and All American that "your policy . . . has been
reinsured and assumed by [AICT]." The letter assured the policyholders
"that there are no changes in your policy. All of the terms and conditions
of your policy remain the same." Referring to an enclosed "Assumption
Certificate," the letter reiterated, "This Certificate confirms there
are no changes in the terms and benefits of your current policy." The
notice letter further informed the policyholders that premium notices would be
mailed from AICT, enclosing a pre-addressed envelope to mail currently due
premiums directly to AICT. The letter was jointly signed by John F. McManus,
Executive Vice President of All American, and by Lyndon L. Olson, President of
AICT.
The "Assumption Certificate"
included with the letter to Appellant Woodrow stated:
ASSUMPTION CERTIFICATE

 Policy Number and Name Y000568630                              
 Effective Date
 of Insured or Policyholder: Duane D. Woodrow                    
 Sept. 30, 1989

This is to certify that the
above-numbered policy, issued or assumed by
ALL-AMERICAN LIFE INSURANCE COMPANY
Chicago, Illinois
Has Been Assumed and Reinsured by
AMERICAN INSURANCE COMPANY OF
TEXAS
A Legal Reserve Stock
Life Insurance Company
Waco, Texas

        
 This is to certify that under the terms of an Assumption Agreement between
 American Insurance Company of Texas and All American Life Insurance Company
 effective September 30, 1989, your policy (number shown on above label) and
 all endorsements and riders thereto (herein called "The Policy")
 issued or assumed by All American Life Insurance Company, an Illinois
 Corporation, was transferred to and all liability under it assumed by American
 Insurance Company of Texas, a Texas Corporation.
        
 All terms and conditions of the Policy remain unchanged, except that American
 Insurance Company of Texas shall be the insurer. All premium payments,
 notices, claims and suits of [sic] actions on the Policy shall hereafter be
 made directly to American Insurance Company of Texas as though it had issued
 the Policy originally.
        
 The acceptance of this Certificate and payment of the first premium due to
 American Insurance Company of Texas by the owner of said policy or contract
 will evidence your consent to the assumption but will not serve as a waiver or
 release of any rights the owner may have under said policy or contract.
        
 IN WITNESS WHEREOF, the American Insurance Company of Texas has caused this
 instrument to be signed by its President and Secretary at the Home Office of
 the Company in Waco, Texas, as of September 30, 1989.

Appellants Vandeventer and Walpole
received identical letters with identical enclosed certificates. During the
subsequent nine-year period from 1989 to 1998, Appellant Vandeventer paid his
premiums to AICT, including the premiums for the return of premium rider, and he
had no claims. Appellants Woodrow and Walpole likewise paid their premiums to
AICT for the years from 1989 to 1998, including their premiums for the return of
premium rider, and they had no claims.
In July 1998, after collecting nine years
of premiums, including nine years of refund benefit rider premiums, AICT
notified Appellants that it was cancelling their policies and denying any return
of premiums for that ten-year period. Appellants filed suit against AICT, All
American, and National Group Insurance Companies.
Appellants alleged four causes of action:
(1) breach of contract; (2) unjust enrichment; (3) illusory contract; and (4)
breach of the duty of good faith and fair dealing.(1)
Specifically, as pertinent to this appeal, Appellants alleged that All American
transferred its entire block of disability policies to avoid its obligations
under the policies in the future, which All American knew was far in excess of
its reserves, and hence sought to "dump" the policies on another
company. Appellants further alleged that All American made no appropriate
disclosure to Appellants of the terms and conditions of the transfer or the
insufficient financial ability of AICT to pay on the policies. Appellants
further alleged that National Group and AICT planned to terminate the policies
after the maximum amount of premiums had been collected in order to retain all
reserves for their own benefit. Appellants asserted that they never agreed to
release All American from liability under the policies and that both companies
remained jointly and severally liable for damages to Appellants.(2)
All American filed a traditional motion
for summary judgment contending that, as a matter of law, Appellants consented
to the Assumption Agreement, creating a "novation" that substituted
AICT as the insurer, released All American from any liability, and that barred
recovery by Appellants under any of the theories alleged. All American also
asserted in its motion for summary judgment that because AICT, not All American,
received Appellants' premiums subsequent to 1989, All American could not have
been unjustly enriched. Additionally, the motion for summary judgment asserted
that Appellants had no cause of action based upon an illusory contract because
the policy did not deny benefits under all circumstances. Finally, All American
contended it had no duty of good faith and fair dealing under the facts because
this case does not involve claims handling. The trial court granted All
American's motion for summary judgment without specifying the grounds.(3)
III. STANDARD OF REVIEW
In an appeal from a summary judgment, the
issue is whether the movant's summary judgment burden has been met by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); KPMG
Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex.
1999); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678
(Tex. 1979). The burden of proof is on the movant, and all doubts about the
existence of a genuine issue of material fact are resolved against the movant. Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); Friendswood Dev. Co. v.
McDade + Co., 926 S.W.2d 280, 282 (Tex. 1996); Great Am. Reserve Ins.
Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).
Therefore, we must view the evidence and its reasonable inferences in the light
most favorable to the nonmovant. Great Am., 391 S.W.2d at 47.
In deciding whether there is a material
fact issue precluding summary judgment, all conflicts in the evidence are
disregarded and the evidence favorable to the nonmovant is accepted as true. Rhone-Poulenc,
997 S.W.2d at 223; Harwell v. State Farm Mut. Auto. Ins. Co., 896
S.W.2d 170, 173 (Tex. 1995). Evidence that favors the movant's position will not
be considered unless it is uncontroverted. Great Am., 391 S.W.2d at 47.
The summary judgment will be affirmed only
if the record establishes that the movant has conclusively proved all essential
elements of the movant's cause of action or defense as a matter of law. Clear
Creek Basin, 589 S.W.2d at 678. A
defendant is entitled to summary judgment if the summary judgment evidence
establishes, as a matter of law, that at least one element of a plaintiff's
cause of action cannot be established. Elliott-Williams Co. v. Diaz,
S.W.3d 801, 803 (Tex. 1999). The defendant as movant must present summary
judgment evidence that negates an element of the plaintiff's claim. Once the
defendant produces sufficient evidence to establish the right to summary
judgment, the burden shifts to the plaintiff to come forward with competent
controverting evidence raising a genuine issue of material fact with regard to
the element challenged by the defendant. Centeq Realty, Inc. v. Siegler,
899 S.W.2d 195, 197 (Tex. 1995).
To be entitled to summary judgment on an
affirmative defense, such as novation, a defendant must conclusively establish
by summary judgment evidence each of the elements of that affirmative defense. KPMG
Peat Marwick, 988 S.W.2d at 748; Ryland Group, Inc. v. Hood, 924
S.W.2d 120, 121 (Tex. 1996); see also Honeycutt v. Billingsley, 992
S.W.2d 570, 577 (Tex. App.--Houston 1999, pet. denied) ("Novation is an
affirmative defense.").
IV. CHOICE OF LAW
Choice of law must be decided on an
individual basis. Lutheran Brotherhood v. Kidder Peabody & Co., 829
S.W.2d 300, 310 (Tex. App.--Texarkana), judgment set aside and cause
remanded for rendition of agreed judgment, 840 S.W.2d 384 (Tex. 1992).
Which state's law governs a substantive issue is a question of law, which we
must resolve de novo. Minn. Mining & Mfg. Co. v. Nishika, Ltd.,
955 S.W.2d 853, 856 (Tex. 1996).(4)
Appellants resided in South Carolina and
Indiana when the policies were issued and at the time of the summary judgment,
and the policies were purchased and issued to them in those states. The only
factor connecting Texas with this suit is that AICT is a Texas company, but it
was not a party to the summary judgment and is not a party to this suit on
appeal.(5) Therefore, under a choice of law
analysis, the substantive law of Indiana should apply to Vandeventer's and
Woodrow's claims, and the substantive law of South Carolina should apply to
Walpole. See Hull & Co., Inc., 889 S.W.2d at 517-18 (holding
Florida law applied to bad faith claim by Florida resident against foreign
insurer where contract made in Florida and subject of policy located in
Florida); see also TV-3, Inc. v. Royal Ins. Co., 28 F. Supp. 2d 407,
414-15 (E.D. Tex. 1998) (holding Mississippi law applied where policy was
delivered in that state and loss occurred there); SnyderGeneral, 928 F.
Supp. at 677 (holding Minnesota law applied where policy was negotiated and
purchased in Minnesota, insured corporation was organized and based there, and
insurer transacted business there).
Appellants cite Indiana and South Carolina
law on each of the issues raised, under the supposition that the law of those
states "may" apply, as well as cases under Texas law. All American
asserts that the substantive law of Indiana and South Carolina controls. Neither
party, however, has identified a conflict between the law of those states and
that of Texas, the forum state. As discussed below, we believe the decision
under any of these three states' laws would be the same on the issues relevant
to this appeal. In the absence of a true conflict, we need not undertake a
choice of law analysis. Duncan v. Cessna Aircraft Co., 665 S.W.2d 414,
419 (Tex. 1989) (determining that, before undertaking choice of law analysis,
court must first determine whether there is a difference between the applicable
law of the foreign state and that of Texas on the issue); Young Refining
Corp. v. Pennzoil Co., 46 S.W.3d 380, 385 (Tex. App.--Houston [1st
Dist.] 2001, pet. denied) (finding no necessity to decide which states' law
applied absent a conflict of law on the issues presented); St. Paul Surplus
Lines Ins. Co. v. Geo Pipe Co., 25 S.W.3d 900, 903 n.2 (Tex. App.--Houston
[1st Dist.] 2000, no pet.) ("In the absence of a true conflict
of law, we do not undertake choice of law analysis.").
V. DISCUSSION

 Novation

Appellants contend that the trial court
erred by granting summary judgment against them because All American failed to
establish the affirmative defense of novation as a matter of law. Alternatively,
Appellants contend that their own evidence, including affidavits of expert
witnesses raised genuine issues of material fact as to whether novation
occurred.

 
 
 Applicable Law
 
 

Novation is the creation of a new
obligation in the place of an old one, by which the parties agree that a new
obligor will be substituted to perform the duties agreed upon by the old
contract, while the original obligor is released from performing those duties. Winkler
v. V.G. Reed & Sons, Inc., 638 N.E.2d 1228, 1233 (Ind. 1994); Adams
v. B & D, Inc., 377 S.E.2d 315, 317 (S.C. 1989); Honeycutt v.
Billingsley, 992 S.W.2d 570, 576 (Tex. App.--Houston [1st Dist.]
1999, pet. denied) (defining "novation" as substitution of new
agreement between same parties or substitution of a new party to same
agreement). The essential elements of novation are: (1) a valid, existing
contract; (2) a mutual agreement of all parties to a new contract; (3) the
extinguishment of the old contract; and (4) a valid new contract. Winkler,
638 N.E.2d at 1233; SSD Control Techs. v. Breakthrough Tech., Inc., 685
N.E.2d 1136, 1138 (Ind. Ct. App. 1997); Superior Auto. Ins., Co. v. Maners,
199 S.E.2d 719, 722 (S.C. 1973); Honeycutt, 992 S.W.2d at 576; Vivion
v. Grelling, 837 S.W.2d 255, 257 (Tex. App.--Eastland 1992, writ denied).
Because of its nature as an affirmative defense, the party alleging novation has
the burden of proof. Honeycutt, 992 S.W.2d at 577.
Whether a novation has occurred is a
matter of intent of the parties. Superior Auto., 199 S.E.2d at 722; Boswell
v. Lyon, 401 N.E.2d 735, 741 (Ind. Ct. App. 1980); Bank of N. Am.
v. Bluewater Maint., Inc., 578 S.W.2d 841, 842 (Tex. Civ. App.--Houston [1st
Dist.] 1979, writ ref'd n.r.e.). Only if a party has agreed to a substitution of
a new party in the place of another is the former party relieved of liability. Livernois
v. Warner-Lambert Co., 723 F.2d 1148, 1153 (4th Cir. 1983); Superior
Auto., 199 S.E.2d at 722; Boswell, 401 N.E.2d at 741. Consent of
the parties cannot be achieved unilaterally. Livernois, 723 F.2d at
1153; Winkler, 638 N.E.2d at 1233.
Consent to substitute a new obligor and
release the old obligor may be express or implied. See, e.g., Jay
Cee Fish Co. v. Cannarella, 279 F. Supp. 67, 72 (D. S.C. 1968) (holding
consent may be the legal result of acts and conduct, even though no express
agreement occurs); Rose Acre Farms, Inc. v. Cone, 492 N.E.2d 61, 69
(Ind. Ct. App. 1986) (recognizing implicit agreement); White Truck Sales v.
Shelby Nat'l Bank, 420 N.E.2d 1266, 1271 (Ind. Ct. App. 1981)
(acknowledging express agreement); Bluewater Maint., Inc., 578 S.W.2d
at 842 ("The intent to accept the new obligation in lieu and in discharge
of the old one may be inferred from the facts and circumstances surrounding the
transaction [and] the conduct of the parties."). Nevertheless, novation is
never presumed; there must be a "clear, definite intention on the part of
all concerned that such is the purpose of the agreement." J.B. Speed
& Co. v. Traylor, 173 N.E. 461, 464 (Ind. Ct. App. 1930); see also
Hill v. Citizens Nat'l Bank of Dallas, 495 S.W.2d 615, 619 (Tex. Civ.
App.--Tyler 1973) (holding intent to extinguish original indebtedness never
presumed), rev'd on other grounds, 505 S.W.2d 246 (Tex. 1974); Gen.
Fin. & Guar. Co. v. Smith, 309 S.W.2d 531, 536 (Tex. Civ.
App.--Amarillo 1958, writ ref'd n.r.e.) (stating that novation requires clear
and definite intent on the part of all concerned).
Moreover, the relevant intent, whether
express or implied, is the obligee's intent not merely to allow a delegation of
duty but actually to release the first obligor and to seek performance only
from the party allegedly substituted. White Truck Sales, 420 N.E.2d at
1271. When confronted with a novation defense, courts in Indiana and elsewhere
have insisted on clear evidence of the obligee's intent to release the obligor
of his obligations under the original contract. See Modern Photo Offset
Supply v. Woodfield Group, 663 N.E.2d 547, 551 (Ind. Ct. App. 1996)
(reversing finding of novation absent evidence of intent to release original
obligor); White Truck Sales, 420 N.E.2d at 1271 (affirming judgment of
no novation absent mention in agreement of release of original obligor); Boswell,
401 N.E.2d at 742-43 (rejecting novation defense as matter of law absent
evidence of release).
Other courts have also required evidence
of intent to release the original obligor. See CH2M Hill Central, Inc. v.
Madison-Madison Int'l Inc., 895 F.2d 286, 291-92 (7th
Cir. 1989) (applying common law standard under Wisconsin law and affirming
summary judgment of no novation); Sec. Benefit Life Ins. Co., v. F.D.I.C.,
804 F. Supp. 217, 225-29 (D. Kan. 1992) (rejecting novation defense as matter of
law absent clear understanding to release original obligor); In re
Integrated Res. Life Ins. Co., 562 N.W.2d 179, 182 (Iowa 1997) (reversing
finding of novation absent evidence of intent to release original obligor).
Unless the obligee makes a clear manifestation of assent to the substitution of
the new obligor and release of the original obligor, he retains his rights
against the original obligor. Sec. Benefit, 804 F. Supp. at 255; Burnett
v. W. Madison State Bank, 31 N.E.2d 776, 780 (Ill. 1941) (holding facts
consistent with intent to look to both original and successor bank for payment
insufficient to show novation); Phillips & Arnold, Inc., v. Frederick J.
Borgsmiller, Inc., 462 N.E.2d 924, 929 (Ill. App. Ct. 1984) (holding
assumption agreement merely added additional debtor absent clear proof of
novation); see also State ex rel. v. Bank Sav. Life Ins. Co., 75 P.2d
297, 301 (Kan. 1938) (noting insured need not dissent from terms of reinsurance
contract to recover from insurer's receiver on original insurance contract).

 
 
 Evidence
 
 

As summary judgment evidence in support of
its novation defense, All American relied upon: (1) the contract of sale between
All American and AICT; (2) a copy of the assumption certificate and accompanying
notice letter furnished to each Appellant after the Assumption Agreement had
been entered into by All American with AICT; and (3) Appellants' class
certification hearing testimony.
All American relies upon the terms of the
Assumption Agreement between itself and AICT, by which it agreed to transfer,
and AICT agreed to assume, "one hundred percent . . . of [All American's]
liability under the policies . . . for all losses" after the effective date
of the sale. Because AICT assumed all liability under the policies, All American
reasons that it necessarily retained no liability. All American further points
out that the Assumption Certificate furnished to the policyholders, including
Appellants, recites that "[a]ll terms and conditions of the Policy remain
unchanged, except that [AICT] shall be the insurer," and
concluded, "The acceptance of the Certificate and payment of the first
premium due to AICT . . . will evidence [each insured's] consent to the
assumption.'" [Emphases added by All American.]
All American contends that Appellants thus
received notice and expressly or, at least, impliedly agreed to substitute AICT
for All American by paying their premiums to AICT, rather than All American, for
nine years. Finally, All American argues that Appellants' deposition testimony
from the class certification hearing is evidence that Appellants consented to
substitute AICT for All American. Each Appellant was asked to and did confirm in
his testimony that he received his Assumption Certificate and understood the
policies had been assumed by AICT. Over the nine years after the policies were
transferred, Appellants paid their premiums to AICT knowing the policies had
been transferred. They understood that AICT was their insurance company after
1989 and had no objection to the transfer as long as they were treated right.
Appellants responded in the trial court
and contend here that they were not made parties to, nor informed in advance of,
the terms of the Assumption Agreement between the two insurers. Indeed, there is
no summary judgment evidence that Appellants were ever provided copies of the
Assumption Agreement. In particular, Appellants point out that the notice letter
accompanying the Assumption Certificate that was sent to each policyholder
states, "[L]et us assure you that there are no changes in your policy. All
of the terms and conditions of your policy remain the same." The letter
also states, "[T]his Certificate confirms there are no changes in the terms
or benefits of your current policy." The Assumption Certificates sent to
Appellants to be attached to their policies also states that "[a]ll terms
and conditions of the Policy remain unchanged, except that [AICT] shall be the
insurer. All premium payments, notices, claims of suits of actions on the Policy
shall hereafter be made directly to [AICT] as though it had issued the Policy
originally."
Appellants point out that neither the
notice letters nor the Assumption Certificates mention to the policyholders that
any obligations under the policies of the issuing insurer, All American, would
be extinguished or released. To the contrary, the Assumption Certificates state:

 [T]he acceptance of this Certificate and
 payment of the first premium due to [AICT] by the owner of said policy or
 contract will evidence your consent to the assumption but will not serve
 as a waiver or release of any rights the owner may have under said policy or
 contract.

[Emphasis added by Appellants.]
Appellants' affidavits averred that they
believed All American would continue to stand behind its policies in the event
that AICT folded or failed to treat them fairly, even though they looked to AICT
for coverage after the sale of the policies to AICT. Appellants' affidavits also
swore that they never thought that they had a new contract, nor did they believe
their rights against All American were extinguished.

 
 
 Application of Law to Facts
 
 

After examining the terms of the
Assumption Agreement, the wording of the notice letter and Assumption
Certificates, and the affidavits of Appellants in the light most favorable to
Appellants, we hold that All American has failed to meet its summary judgment
burden of proof and that Appellants have raised a genuine issue of material fact
as to All American's affirmative defense of novation.
The Assumption Agreement, to which
Appellants were not parties and which was never furnished to them, is no
evidence that Appellants agreed to a substitution of AICT for All American so as
to constitute a novation. The only provision in the Assumption Agreement
concerning the notification of Appellants of its existence was the service
clause providing that AICT would notify policyholders of its assumption of
liability under the policies through issuance of Assumption Certificates. The
actual terms of the Assumption Agreement were never submitted to Appellants for
their approval, but were already agreed upon and in effect before the
Certificates of Assumption were sent to Appellants.
The Certificates of Assumption sent to
Appellants are critical in determining whether Appellants agreed to substitute
AICT for All American. While the Certificate and notice letter state that AICT
would be Appellants' insurer, the Certificates also state, as reiterated by the
attached letter, that the terms of the policy remain unchanged. Most
importantly, while the Certificates affirmatively state that acceptance of the
Certificate and payment of the first premium to AICT would evidence Appellants'
consent to the "assumption," those Certificates also affirmatively
state that such action by them "will not serve as a waiver or release of
any rights" of Appellants under their policies.
Absent from both the Certificates and the
attached letters is any language regarding novation, substitution,
extinguishment, or release of Appellants' rights against All American under the
policies. Importantly, the documents sent to Appellants provide no instruction
or guidance to Appellants on what to do if they did not wish to consent
to the assumption of the policies by AICT. Appellants were effectively faced
with either paying AICT their next premium or simply losing their coverage,
which included a substantial investment that had built up over the years, in
addition to the eighty percent premium refund right. Appellants argue that this
is not a choice at all. We agree.
Because the Certificates of Assumption and
notice letters received by Appellants repeatedly assured them that there was no
change in their policy terms and condition and that payment of premiums to AICT
would "not serve as a waiver or release of any rights," these
documents, together with the Assumption Agreement, are evidence of a mere
assignment, not a novation, as to Appellants. See, e.g., Superior Auto.,
199 S.E.2d at 722 (holding express unambiguous language of agreement amounted to
modification rather than novation where no radical change occurred or choice was
offered). The mere assignment of the policy could not of itself transfer and
release liability of the original contracting party. Boswell, 401
N.E.2d at 742; Foremost Life Ins. Co. v. Dep't of Ins., 395 N.E.2d 418,
423 (Ind. Ct. App. 1979) (holding original insurer remained jointly liable on
reinsured policies transferred to second insurer absent novation), vacated
on other grounds, 409 N.E.2d 1092 (Ind. 1980); Segars v. Segars,
310 S.E.2d 156, 158-59 (S.C. 1983).
Absent further specific guidance from
Indiana or South Carolina courts, we consider cases from other jurisdictions
regarding what evidence is necessary to establish a novation relieving the
original insurer of liability when transferring a block of policies to another
insurer:

 An insurer may not transfer its
 liability to another company and compel its policyholders to accept the new
 company as their insurer. When another insurer assumes the [first] insurer's
 obligations, the original insurer is not relieved of its liability to the
 insured without the consent of the insured to substitute another insurer.

AICCO, Inc. v. Ins. Co. of N. Am.,
109 Cal. Rptr. 2d 359, 367 (Cal. Ct. App. 2001) (quoting 14 Eric Mills Holmes,
Appleman on Insurance 2d § 109.1, at 609 (2000)).
We find Prucha v. Guarantee Reserve
Insurance Co. persuasive. 358 So. 2d 1155 (Fla. Dist. Ct. App. 1978). In
that case, Guarantee had issued the plaintiff a noncancellable income policy
with a premium refund rider providing for the return of eighty percent of
premiums paid if no benefits were paid under the policy for a ten-year period. Id.
at 1156-57. The policyholder, as in this case, received only post hoc
notices informing him that his policy had been sold to Underwriters and
directing that he make future premium payments to Underwriters. Accordingly, he
made his premium payments to Underwriters for the next several years without
complaint. Id. at 1157.
The notices sent to the policyholder in Prucha
were worded very similarly to the notices received by the policyholders in the
instant case: "The only change will be that you will send your premium from
this date on to Underwriters. . . . Let me repeat, all the provisions of your
policy remain the same; there are no changes." Id. As in this
case, the notices sent to the policyholder in Prucha failed to inform
the plaintiff that Guarantee would be released from liability. Id.
When Underwriters subsequently went
through rehabilitation proceedings, the policyholder sought his premium refund
under the rider from Guarantee, which contended there had been a novation by the
sale of the policies.(6) Reversing a summary
judgment for Guarantee, the court held that the evidence was insufficient to
establish a novation as a matter of law because "[t]he plaintiff was not
presented with an effective alternative to the course that he pursued." Id.
The court continued, "Plaintiff['s] consent was not asked for. His consent
may not be implied where he had no opportunity not to consent." Id.
Even more to the point, the court stated, "Faced with the accomplished fact
of the transfer, all the plaintiff could do was to continue paying the premiums
or abandon his investment." Id. at 1157-58.
Baer v. Associated Life Insurance Co.
is also persuasive. 248 Cal. Rptr. 236, 239 (Cal. Ct. App. 1988). Baer
contracted with Associated Life for insurance coverage under a group medical
plan. Id. at 236. He was injured in an auto accident and rendered a
quadriplegic while coverage was in effect and incurred substantial medical
expenses. Id. In the meantime, Associated Life withdrew from doing
business in California pursuant to a cease and desist order issued by the
California Insurance Commissioner and entered into a Reinsurance and Assumption
Agreement in which it transferred Baer's policy to a second insurer. Id.
at 237. Baer claimed he was not notified of the transfer, but he did submit
claims to the second insurer. When the second insurer defaulted and became
insolvent, Baer turned to Associated Life for payment of his benefits.
In a suit by Baer against it, Associated
Life filed a motion for summary judgment, contending that the assumption
agreement constituted a novation releasing it from any liability. Id.
Associated Life contended that, by submission of his claims to the second
insurer, Baer evidenced his consent to the assignment and assumption of
liability by the transferee insurer as well as the release of any liability of
Associated Life. The appellate court disagreed. Reversing the summary judgment
and remanding for trial, the Baer court relied upon and quoted from Prucha
that novation is predicated on consent. The insured's consent was not asked for
and could not be implied where he had no opportunity not to consent and no
opportunity to object to the agreement before it was executed. The court stated,
"It simply is not within the power of an insurer, against the consent of
the insured, to substitute another insurer in carrying out of its
undertaking." Id. at 239 (citing Prucha, 358 So. 2d at
1157-58); see also Sec. Benefit, 804 F. Supp. at 226 (holding
assumption agreement in which subsequent insurer was substituted for original
insurer not clear and definite proof of consent of policyholders to extinguish
or relieve original insurer of its obligations where assumption certificates
failed to state original insurer was "released" or that its
obligations were transferred in full to subsequent insurer); Travelers Ind.
Co. v. Gillespie, 785 P.2d 500, 508-09 (Cal. 1990) (stating original
insurer not released absent consent of insured, but remained jointly and
severally liable with second insurer on policy transferred pursuant to
reinsurance and assumption agreement).
Both the Florida court in Prucha
and the California court in Baer relied upon and followed American
National Insurance Co. v. Briggs. 70 S.W.2d 491, 494 (Tex. Civ.
App.--Beaumont 1934, writ dism'd). In Briggs, American National denied
benefits to Briggs for medical expenses under a health and accident policy it
had originally issued. Briggs sued both American National and Washington
National Insurance Company, alleging that the policy had been
"assumed" by Washington National and that it was liable with American
National by virtue of its assumption. American National contended that it was
entitled to judgment as a matter of law based on Briggs's pleading of the
assumption of liability by Washington National.
The Beaumont court held against the
original insurer, American National, opining, "That Washington National
Insurance Company had thus assumed the insurer's obligations did not relieve
appellant of liability to appellee." Id. at 493-94 (quoting Wash.
Life Ins. v. Lovejoy, 149 S.W. 398, 403 (Tex. Civ. App.--Galveston 1912,
writ ref'd) ("It is not within the power of [an insurer], against the
[insured's] consent, to substitute [another insurer] in the carrying out of its
undertaking.")).
In contrast, in Epland v. Meade
Insurance Agency Associates, Lumbermens, as the original insurer
on a medical insurance policy issued to the Eplands, entered into an assumption
agreement transferring the Eplands' policy to Reserve Life Insurance Company.
564 N.W.2d 203, 205 (Minn. 1997). Reserve sent a notice to the insureds advising
them of the assumption agreement, instructing them to send future premium
payments to Reserve, and stating that, by sending payments to Reserve, the
Eplands would be "consenting to release Lumbermens from any liability on
the policy." Id. at 205. The Eplands sent their payments to
Reserve and chose to renew the policy. Id.
The Supreme Court of Minnesota affirmed a
summary judgment in favor of Lumbermens, the original insurer, holding that,
under traditional common law principles of assignments, consent of the Eplands
was not required to validate Reserve's "assumption agreement" because
consent under general contract principles is not required for an assignment of
rights or delegation of duties. Id. The court held, however, that
consent was necessary to release Lumbermens from liability on the
policy, noting that all parties must agree in order to have an effective
novation of an insurance contract and that such consent to release an original
insurer must "distinctly appear, from the express terms of the agreement,
or as a necessary inference from the situation of the parties, and from the
special circumstances." Id. at 207. Based on the undisputed facts
in that case, the court held that the Eplands manifested consent to both the
assumption contract and the release of Lumbermens by paying premiums to, and
choosing to renew their policy with, Reserve after receiving notice from it,
which expressly stated that by sending payments to Reserve they would be
"consenting to release" Lumbermans. Id.
Here, in contrast to the facts in Epland,
there was not only an absence of any mention to Appellants that payment of
premiums to AICT would release All American, but the Certificates of Assumption
issued to Appellants stated the contrary -- that payment of premiums would not
serve as a release or waiver of any rights under the policy. We hold that All
American has failed to establish its affirmative defense of novation as a matter
of law and that genuine issues of material fact remain as to whether Appellants
accepted AICT as a substitute for All American so as to effect a novation. We
sustain Appellants' first issue.

 Illusory Contract

Appellants argue that All American's
cancellation provision, allowing cancellation of all like policies on the policy
anniversary date, constitutes illusory coverage regarding the effect of their
premium refund riders, entitling them to restitution or a refund of premiums
paid. All American responds that under the laws of both Indiana and South
Carolina, illusory coverage does not apply to this premium refund rider because
the policies paid benefits under some circumstances.
Appellants Vandeventer and Woodrow argue
that their refund rider is effectively extinguished by the provision providing
that the policy may not be renewed "[i]f renewals are declined on a policy
anniversary on all like policies then in force." More specifically, they
contend that premiums could be collected for nine years and that the insurer
could then cancel the policies and negate the policy before the tenth-year
anniversary date, which is when the eighty percent premium refund is to be
issued.(7)
An insurance policy is considered illusory
in Indiana if "a premium was paid for coverage which would not pay benefits
under any reasonably expected set of circumstances." Fid. & Guar.
Ins. Underwriters, Inc. v. Everett I. Brown Co., 25 F.3d 484, 490 (7th
Cir. 1994); see also City of Lawrence v. Western World Ins. Co.,
626 N.E.2d 477, 480 (Ind. Ct. App. 1993). In Indiana, insurance policies that
provide illusory coverage are against public policy. Fid. & Guar. Ins.
Underwriters, 25 F.3d at 490; Monticello Ins. Co. v. Mike's Speedway
Lounge, Inc., 949 F. Supp. 694, 699 (S.D. Ind. 1996); Landis v. Am.
Interinsurance Exch., 542 N.E.2d 1351, 1354 (Ind. Ct. App. 1989). When a
policy provides illusory coverage, Indiana courts give effect to the reasonable
expectations of the insured. Landis, 542 N.E.2d at 1354.(8)
Indiana law protects the insured from
insurance policies that provide coverage that would not pay benefits under any
reasonable circumstance. City of Lawrence, 626 N.E.2d at 480; see
also Fid. & Guar. Ins. Underwriters, 25 F.3d at 490 (noting
that policy did provide coverage under many circumstances and concluding
coverage not illusory); Monticello, 949 F. Supp. at 699 (holding
absolute alcohol exclusion clause rendered policy coverage illusory); Davidson
v. Cincinnati Ins. Co., 572 N.E.2d 502, 508 (Ind. Ct. App. 1991) (holding
coverage for slander and malicious prosecution was illusory due to exclusion
clause for expected or intended consequences of conduct); Landis, 542
N.E.2d at 1354 (noting underinsurance clause was ambiguous and applying
interpretation in favor of reasonable expectations of insured).
Because Vandeventer and Woodrow do not
dispute that they were paid benefits for two ten-year periods under the premium
return rider, All American argues that it established its right to summary
judgment on the claim of illusory contract under Indiana law because the
policies would, and in fact did, "pay benefits under any reasonable
circumstance." City of Lawrence, 626 N.E.2d at 480. All American
paid Vandeventer and Woodrow eighty percent premium refunds on two separate
occasions. Further, Woodrow filed a claim in 1972 that was honored by All
American.
We disagree that Indiana law may be read
so narrowly. Indiana law supports Appellants' theory of illusory contract
because it also recognizes that a promise is illusory if it "makes
performance entirely optional with the promisor." Penn v. Ryan's Family
Steak Houses, Inc., 269 F.3d 753, 759 (7th Cir. 2001). An
illusory contract cannot form the basis for an enforceable contract. Id.;
Ind.-Am. Water Co. v. Town of Seelyville, 698 N.E.2d 1255, 1260 (Ind. Ct.
App. 1998); Pardieck v. Pardieck, 676 N.E.2d 359, 364 n.3 (Ind. Ct.
App. 1997) ("[A] contract is unenforceable if it fails to obligate [one
party] to do anything."). Likewise, under Texas law, a promise is illusory
when it fails to bind the promisor, who "retains the option of
discontinuing performance." In re C & H News Co., No.
13-02-529-CV, 2003 WL 131770, at *4 (Tex. App.--Corpus Christi Jan. 16, 2003,
orig. proceeding) (holding agreement in which employer reserved right to
unilaterally amend types of claims subject to arbitration was illusory and
unenforceable contract); see also Light v. Centel Cellular Co., 883
S.W.2d 642, 645 (Tex. 1994); In re H.E. Butt Grocery Co., 17 S.W.3d
360, 370 (Tex. App.--Houston [14th Dist.] 2000, orig. proceeding).
While the benefit rider entitles an
insured to reimbursement of eighty percent of premiums paid if the insured makes
no claims during a ten-year period, the nonrenewal provision of the policy
written and issued by All American allows nonrenewal on any anniversary date if
all like policies are nonrenewed. Thus, an insured may pay premiums for nine
years, refrain from filing claims, and earn entitlement to reimbursement or
refund of eighty percent of those premiums, but then, as Appellants argue, have
his right to reimbursement nullified by nonrenewal before the ten-year
anniversary date for refund of premiums. According to Appellants, this course of
events is what transpired in this case. Because we have held that All America
failed to establish its release from contractual liability by a novation, All
America remains jointly and severally liable under the policies as to any
benefits owed. Thus, under both Indiana and Texas law, we hold that All American
did not establish its right to summary judgment on Vandeventer's and Woodrow's
claims for illusory contract as a matter of law.
Walpole, like Vandeventer and Woodrow,
argues that his refund rider provided illusory coverage by reason of the
provision allowing nonrenewal on a policy anniversary date. It also appears that
South Carolina recognizes the concept of illusory coverage. In B.L.G.
Enterprises, Inc. v. First Financial Insurance Co., the South Carolina
Supreme Court held that an insurance policy issued to BLG tavern was not
illusory notwithstanding a policy exclusion for bodily injury caused by the
selling or serving of alcohol. 514 S.E.2d 327, 330-31 (S.C. 1999). In its
discussion, the BLG court noted that the policy coverage remained
intact despite a liquor liability exclusion omitting coverage for activity
stemming from the sale or serving of alcohol. Id. (citing Excelsior
Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 941 (Fla.
1979)). The court envisioned a situation by which the tavern would have coverage
for a slip-and-fall accident as long as the accident did not involve the sale or
service of alcohol. Id.
South Carolina law protects policyholders
from insurance policies that would not pay benefits under any reasonable
circumstance. B.L.G., 514 S.E.2d at 330-31. Like Vandeventer and
Woodrow, Walpole received an eighty percent premium refund from All American
under his premium benefit rider on two separate occasions, and AICT paid him a
refund under the rider in February 1991. We agree with All American that the
nonrenewal provision only allows nonrenewal on a policy anniversary date and
only if renewal is declined on all similar policies then in force. This
provision does not expressly negate the rider at issue or any coverage offered
by the policy. It does allow, however, nonrenewal on any given anniversary date
without regard to the entitlement of insureds to a refund of premiums over a
ten-year period under the riders. Like Indiana, South Carolina also appears to
recognize that an illusory contract is "an apparent promise which makes
performance optional with the promisor [and] is in fact no promise." Hooters
of Am., Inc. v. Phillips, 39 F. Supp. 2d 582, 617 (D.S.C. 1998) (applying
South Carolina law and quoting Elmore v. Cone Mills, Corp., 23 F.3d
855, 870 (4th Cir. 1994)), aff'd, 173 F.3d 933 (1999).(9)
We hold that the summary judgment was improper as to All American on Walpole's
claim of illusory coverage under South Carolina law. We sustain Appellants'
second issue.


 Duty of Good Faith and Fair Dealing

Appellants pleaded that All American
breached its duty of good faith and fair dealing by failing to transfer the
policies to a company with assets and financial capability equal to or superior
to its own and by failing to inform policyholders that AICT was
"financially inferior" to All American. Appellants contend this breach
prevented them from making an informed decision to accept the substitution of
AICT for All American as the insurer. All American contended by its motion for
summary judgment that the duty of good faith and fair dealing applies only to
claims handling, precluding a viable claim for breach of that duty as a matter
of law.
Indiana recognizes an
implied duty in insurance contracts that an insurer will act in good faith with
its insured and provides a cause of action for the tortious breach of that duty.
Hoosier Ins. Co. v. Audiology Found., 745 N.E.2d 300, 310 (Ind. Ct.
App. 2001); Gooch v. State Farm Mut. Auto. Ins. Co., 712 N.E.2d 38, 40
(Ind. Ct. App. 1999). The insurer's duty of good faith and fair dealing, as
recognized by Indiana, includes an obligation to refrain from: (1) causing an
unfounded delay in making payment; (2) making an unfounded refusal to pay policy
proceeds; (3) exercising an unfair advantage to pressure an insured to
settlement of his claim; and (4) deceiving the insured. Hoosier, 745
N.E.2d at 310; accord Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 519
(Ind. 1993).
As contemplated in Indiana, the insurer's
duty of good faith stems from the express and implied contractual obligations of
the insurer to the insured. See, e.g., Erie, 622 N.E.2d at 519-20; Sell
v. United Farm Bureau Family Life Ins. Co., 647 N.E.2d 1129, 1134 (Ind. Ct.
App. 1995); Egnatz v. Med. Prot. Co., 581 N.E.2d 438, 441 (Ind. Ct.
App. 1991); Wedzeb Enters., Inc. v. Aetna Life & Cas. Co., 570
N.E.2d 60, 63 (Ind. Ct. App. 1991). To breach this duty of good faith, the
insurer must act deliberately and consciously rather than negligently. Colley
v. Ind. Farmers Mut. Ins. Group, 691 N.E.2d 1259, 1261 (Ind. Ct. App.
1998); Johnston v. State Farm Mut. Auto. Ins. Co., 667 N.E.2d 802, 805
(Ind. Ct. App. 1996). We have found no indication that courts of Indiana would
extend the duty of good faith and fair dealing beyond claims handling to
encompass conduct of an insurer in a transaction involving sale and transfer of
policies to another insurer. Absent such indication, we decline to predict that
Indiana courts would extend the duty to encompass Vandeventer and Woodrow's
claim.
South Carolina likewise recognizes a cause
of action against an insurance company for breach of the duty of good faith and
fair dealing. See Doe v. S.C. Med. Mal. Liab. Joint Underwriting Ass'n,
557 S.E.2d 670, 674 (S.C. 2001). Under South Carolina law, "[b]ad faith is
a knowing failure on the part of the insurer to exercise an honest and informed
judgment in processing a claim." Id. (citing Am. Fire &
Cas. Co. v. Johnson, 504 S.E.2d 356, 358 (S.C. Ct. App. 1998)); see
also Peterson v. W. Am. Ins. Co., 518 S.E.2d 608, 615 (S.C. Ct. App. 1999)
(noting that, in order to show a breach of the duty, the plaintiff must show,
among other elements, "an insurer's refusal to provide benefits due under
the contract"). Thus, it appears, as All American argues, that South
Carolina only recognizes good faith claims in the context of claims processing.
Absent any citation by Appellants of case law to support their theory under
South Carolina law, we decline to predict that South Carolina courts would hold
that a cause of action by an insured for breach of good faith and fair dealing
would extend to the context of the facts of this case.
Texas law has long recognized a common law
duty of good faith and fair dealing in the context of processing and payment of
claims under first-party insurance coverage. Arnold v. Nat'l County Mut.
Fire Ins. Co., 725 S.W.2d 165, 167 (Tex. 1987) (holding an insurer has a
duty to deal fairly and in good faith with its insured in the processing and
payment of claims). Until recently, the Supreme Court of Texas articulated the
definition of the duty of good faith and fair dealing as follows:

 A breach of the duty of good faith and
 fair dealing is established when: (1) there is an absence of a reasonable
 basis for denying or delaying payment of benefits under the policy and (2) the
 carrier knew or should have known that there was not a reasonable basis for
 denying the claim or delaying payment of the claim.

Republic Ins. Co. v. Stoker, 903
S.W.2d 338, 340 (Tex. 1995) (citing Aranda v. Ins. Co. of N. Am., 748
S.W.2d 210, 213 (Tex. 1988)). In Universe Life Insurance Co. v. Giles,
the court recast the liability standard in positive terms such that "an
insurer will be liable if the insurer knew or should have known that it was
reasonably clear that the claim was covered." 950 S.W.2d 48, 56 (Tex.
1997). Giles articulated the "reasonably clear" standard
found in article 21.21 of the Texas Insurance Code and made it applicable to
common law bad faith claims. Tex. Ins. Code Ann. §§ 4(10)(a)(ii), 21.21; Giles,
950 S.W.2d at 55 (stating that the court was "unif[ying] the common law and
statutory standards for bad faith"). Thus, "an insurer breaches its
duty of good faith and fair dealing by denying [or delaying payment of] a claim
when the insurer's liability has become reasonably clear." State Farm
Fire & Cas. Co. v. Simmons, 963 S.W.2d 42, 44 (Tex. 1998) (citing Giles,
950 S.W.2d at 56).
An objective standard is employed to
determine "whether a reasonable insurer under similar circumstances would
have delayed or denied the claimant's benefits." Aranda, 748
S.W.2d at 213. Evidence that only shows "a bona fide coverage dispute does
not demonstrate that there was no reasonable basis for denying a claim." Provident
Am. Ins. Co. v. Castaneda, 988 S.W.2d 189, 193 (Tex. 1998). Similarly,
"evidence of a coverage dispute is not evidence that liability under the
policy had become reasonably clear." Id. Under Texas law, insurers
also have a duty to properly investigate claims. See Simmons, 963
S.W.2d at 44. "[A]n insurer cannot insulate itself from bad faith liability
by investigating a claim in a manner calculated to construct a pretextual basis
for denial." Id. Appellants do not complain, however, of any
conduct of All American in denying or delaying payment of any claims.
In response to All American's summary
judgment motion, Appellants offered the affidavit of John J. Dillon, a former
commissioner of insurance for Indiana, stating his opinion that All American
knew the policies in question were going to be unprofitable and that they were
going to have to "dump" them to improve their financial condition. In
support of his contention, Dillon noted that the loss ratio for all policies
concerned was eighty-five percent (four years before the sale). The loss ratio
relative to the premium riders was ninety-nine percent just four years before
the sale. Dillon noted that the National Association of Insurance Commissioners
placed the minimum loss ratio deemed reasonable in relation to benefits at sixty
percent. Dillon concluded that, because All American had assets of one billion
dollars at the time of sale compared to AICT's assets of thirty-one million
dollars, All American was not acting in the best interest of the policyholders
in transferring the policies to AICT.
Appellants argue that this evidence raises
a genuine issue of material fact as to whether All American breached its duty of
good faith and fair dealing in transferring Appellants' contracts to AICT
without informing Appellants of the large disparity in size between the two
insurers and by attempting to "dump" Appellants' policies onto a
smaller insurer that did not have the resources necessary to fulfill its
obligation to its insured. Notably absent from Dillon's affidavit or any other
summary judgment evidence offered by Appellant, however, is any evidence of a
nexus between the size or financial status of AICT and its cancellation of
Appellants' policies or denial of a return of Appellants' premiums.
The Supreme Court of Texas has been
cautious in extending the duty of good faith and fair dealing on a case by case
basis.(10) Appellants have not referred us to
any case indicating that the duty of good faith and fair dealing should be
extended All American's conduct regarding the transfer and sale of policies to
another insurer. The only case relied upon by Appellants in support of their
theory of breach of good faith and fair dealing is United Fire Insurance Co.
v. McClelland, 780 P.2d 193 (Nev. 1989). We do not find that case
persuasive on the law or facts.
In McClelland, United Fire
notified its insureds that it had transferred group medical policies, including
those of the plaintiffs, to California Life Insurance Company pursuant to a
reinsurance and assumption agreement. At the time of the transfer, Mr.
McClelland was healthy and insurable. Later, he incurred substantial hospital
and medical expenses for a condition involving altered renal function.
Afterward, the McClellands were thereafter notified by California Life that
coverage under their group plan would be cancelled. After United Fire denied
benefits for the medical expenses incurred by plaintiffs, they sued both
insurers. United Fire, like All American in this case, relied upon the
affirmative defense of novation as substituting California Life as the insurer
in United Fire's place. 780 P.2d at 195. Following a jury trial, the plaintiffs
were awarded compensatory and punitive damages under theories including bad
faith. Id. Affirming the judgment on appeal, the Nevada Supreme Court
held that the issue of novation was one of fact properly submitted to the jury
and that there was sufficient evidence, including expert opinion testimony, that
United Fire retained responsibility to the plaintiffs under the assumption
agreement and knew that it owed the claim. Thus, the Nevada court held United
Fire acted unreasonably and in bad faith in failing to process or pay the claim.
Id. at 197.
United Fire is not of assistance to
Appellants here because they have not alleged that All American refused or
delayed payment of benefits in bad faith, but that the insurer breached the duty
of good faith to Appellant in transferring the policies to AICT. Absent evidence
of factors that the Texas Supreme Court has historically deemed material to the
extension of the duty to protect insureds from the unequal bargaining power of
the insurer, evidence of the ability to take advantage of an insured's
misfortunes, or evidence of the insurer's exclusive control over the claim
evaluation process, we decline to extend the duty of good faith and fair dealing
to an insurer in the context of the facts presented. See Great Am.,
908 S.W.2d at 416; see also Lyons v. Millers Cas. Ins. Co.,
866 S.W.2d 597, 600 (Tex. 1993) (noting insurer's "disproportionately
favorable bargaining posture in the claims handling process").
The "touchstone of bad-faith
liability" in Texas remains "unreasonableness in processing insurance
claims." Giles, 950 S.W.2d at 64 (Hecht, J., concurring). We hold
that the trial court properly granted summary judgment to All American as to
Appellants' claim for breach of good faith and fair dealing. We overrule
Appellants' third issue.
VI. CONCLUSION
Having overruled Appellants' third issue,
and having sustained their first and second issues, we affirm the summary
judgment as to Appellants' claims for breach of the duty of good faith and fair
dealing. We reverse the trial court's judgment granting All American's motion
for summary judgment as to Appellants' breach of contract and illusory contract
claims, and we remand those claims.
 
                                                                       
ANNE GARDNER
                                                                       
JUSTICE
 
PANEL B: HOLMAN, GARDNER, and WALKER, JJ.
 
[DELIVERED MARCH 13, 2003]

1. Appellants do not appeal the summary judgment on their
unjust enrichment claim.
2. Appellants also sought class certification on behalf of
all persons who had purchased premium refund benefit riders from All American
during the period from 1969 to 1974. An agreement was reached for class
certification between Appellants and AICT. The class certification issues as to
All American are not part of this appeal, except that excerpts from testimony at
the certification hearing were relied upon by All American in support of its
motion for summary judgment.
3. The trial court granted an agreed motion to sever
Appellants' claims against AICT and National Group, making the judgment in favor
of All American final for appeal.
4. As to both contract and tort claims, Texas applies the
Restatement's "most significant relationship" test to determine choice
of law issues in insurance cases. SnyderGeneral Corp. v. Great Am. Ins. Co.,
928 F. Supp. 674, 677 (N.D. Tex. 1996) (stating Texas law applies Restatement
(Second) of Conflict of Laws §§ 6, 145, 188 (1971)), aff'd, 133 F.3d
373 (5th Cir. 1998). Likewise, the "most significant
relationship" test is applied by Texas courts to determine which state's
law should be applied in the context of the tort of breach of good faith and
fair dealing. Hull & Co., Inc. v. Chandler, 889 S.W.2d 513, 517
(Tex. App.--Houston [14th Dist.] 1994, writ denied).
5. The trial court granted All American's motion for
summary judgment without noting which state's law it applied in making its
decision.
6. Guarantee also argued that the issue of its liability
on the policy had been effectively determined in the rehabilitation proceedings.
Id. at 1157-58. As to this theory, the court held that the judgment of
the court in the rehabilitation proceeding could not relieve an insurance
company not a party to the proceedings of contracts with persons not parties to
the proceedings. Id. at 1158.
7. We note that the pertinent policy provision references
only "nonrenewal," but Appellants speak in terms of
"cancellation," which does not necessarily carry the same meaning. For
the purpose of this opinion, however, we will assume in favor of Appellants that
the two terms are equivalent in meaning.
8. Texas law does not recognize the "Doctrine of
Reasonable Expectations" of the insured as a basis to disregard unambiguous
policy provisions. Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 145
n.8 (Tex. 1994).
9. All American further contends on appeal that all of the
disputed premiums were paid subsequent to the transfer to AICT. Therefore, All
American argues any liability for return of those premiums would only lie with
AICT. This argument was not made in the trial court and, therefore, is not a
basis for sustaining the summary judgment on appeal. See McConnell v.
Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993).
10. Compare Mid-Century Ins. Co. v. Boyte, 80
S.W.3d 546, 548 (Tex. 2002) (refusing to extend duty of good faith beyond entry
of judgment in favor of insured after trial), Stewart Title Guar. Co. v.
Aiello, 941 S.W.2d 68, 69 (Tex. 1997) (holding duty of good faith did not
extend beyond agreed judgment), and Great Am. Ins. Co. v. N. Austin
Mun. Util. Dist. No. 1, 908 S.W.2d 415, 416 (Tex. 1995) (holding no common
law duty of good faith owed by surety to bond obligee absent factors including
unequal bargaining power, nature of insurance contracts permitting insurer to
take advantage of insured's misfortune in negotiating claim resolution, and
insurance company's exclusive control over the claim evaluation process), with
Rocor Int'l Inc. v. Nat'l Union Fire Ins. Co., 77 S.W.3d 253, 261, 265
(Tex. 2002) (extending statutory duty under section 16(a) of article 21.21 of
the Texas Insurance Code to a liability insurer for failure to attempt
settlement on behalf of an insured once liability had become reasonably clear), and
Union Bankers Ins. Co. v. Shelton, 889 S.W.2d 278, 283 (Tex. 1994)
(extending duty of good faith for conduct of insurer in wrongfully cancelling
policy).